SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## State v. William A. Case, Jr. (A-45-13) (072688)

**Argued October 7, 2014 -- Decided December 2, 2014**

**ALBIN, J. writing for a unanimous Court.**

In this case, the Court reviews whether the trial court misapplied the sentencing principles of the Code of Criminal Justice in imposing a sentence that includes a parole disqualifier.

Defendant waived his right to a jury trial and was convicted of second-degree luring, among other crimes, at the conclusion of a bench trial. The convictions were based on Internet conversations between defendant and a law enforcement officer impersonating a fourteen-year-old female named "Amanda."

The State's primary witness was Detective Christopher Hallet of the Atlantic County Prosecutor's Office Computer Crimes Unit. In August 2008, Detective Hallet created a fictitious online profile of a fourteen-year-old female named Amanda and placed her profile in an Internet chat room. Shortly thereafter, on August 14, 2008, defendant directly contacted Amanda through instant messaging. Over the course of the next six weeks, defendant engaged in four additional online conversations with Amanda, discussing intimate and sexually explicit subjects. On several occasions, they discussed the possibility of engaging in sexual acts. During their final talk on September 24, 2008, defendant agreed to meet Amanda that day at "The Brickworks" in Mays Landing. After defendant pulled his truck into The Brickworks parking lot, law enforcement officers took him into custody. Following his arrest, defendant was interviewed by the police. He claimed that he did not intend to do anything with Amanda and only "wanted to explain to her that this isn't right."

Defendant testified and offered a diminished-capacity defense. Then twenty-nine years old, defendant stated that during his years as a professional firefighter and emergency medical technician (EMT), he experienced traumatic events that caused him to suffer a mental breakdown. He repeated that he did not intend to engage in sexual acts with Amanda. He denied using the Internet to search for "child pornographic materials," and police did not find any such materials on his home computer or in his apartment. Defendant called three mental health experts to support his diminished-capacity defense. All three expressed the view that defendant suffered from post-traumatic stress and did not possess the requisite mental state to commit the crimes charged. The defense also called a number of character witnesses who testified to defendant's trustworthiness and good reputation in the community. The State's expert rejected the validity of the diminished-capacity defense, finding that defendant "engaged in a series of purposeful goal-directed behaviors" that led him to an intended sexual liaison with a minor.

In finding defendant guilty, the trial court rejected the defense of diminished capacity. The court accepted the testimony that events witnessed by defendant as an EMT and firefighter, such as the discovery of dead children, had "a traumatic effect" on him. Nonetheless, it did not believe that defendant's psychological problems deprived him of the ability to engage in purposeful conduct. The court highlighted that defendant was able to navigate the Internet and into chat rooms, and that defendant had visited Internet chat rooms "to speak to females for ten years" before conversing online with Amanda.

The same judge who presided over the bench trial imposed defendant's sentence. Defendant presented nine mitigating factors and the State presented two aggravating factors. The court found mitigating factor seven only -- no history of prior delinquency or criminal activity. The Court addressed two other proposed mitigating factors that it rejected, but it did not give any reasons for disregarding the remaining factors advanced by defendant. The Court found both aggravating factors proposed by the State, aggravating factor three -- risk that defendant will commit another offense, and nine -- need for deterrence.

Defendant's most serious offense, attempted luring, is a second-degree crime with a range of imprisonment between five and ten years. The trial court imposed an aggregate custodial term of eight years with a four-year

1

parole disqualifier. In addition, the court ordered defendant placed on parole supervision for life, that he register as a sex offender, that he forfeit his public employment as a firefighter, that he not possess a device with Internet capability unless required for employment, and that he submit to random searches of his computer or other Internet-capable device.

The Appellate Division affirmed defendant's conviction and sentence in an unpublished opinion. This Court granted defendant's petition for certification limited to the issue of whether he was properly sentenced to a discretionary parole disqualifier. 216 N.J. 361 (2013).

**HELD**: The sentencing proceeding in this case was flawed for several reasons, including the trial court's finding of a critical aggravating factor that was not based on credible evidence in the record. The trial court also failed to articulate clearly how the aggravating and mitigating factors were balanced to arrive at the sentence.

1. In determining the appropriate sentence to impose within the statutory range, judges first must identify any relevant aggravating and mitigating factors. The finding of any factor must be supported by competent, credible evidence in the record. Whether a sentence should gravitate toward the upper or lower end of the range depends on a balancing of the relevant factors. To facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence. (pp. 15-19)

2. The sentencing court, when clearly convinced that the aggravating factors substantially outweigh the mitigating factors, may sentence a defendant to a minimum term not to exceed one-half of the term allowed by the statute. In doing so, however, the court must specifically place on the record the aggravating factors which justify the imposition of a minimum term. (pp. 19-20)

3. Here, sentencing jurisprudence requires that the Court vacate defendant's sentence. First, the weight given by the trial court to aggravating factor three, the risk that defendant will commit another offense, was based not on credible evidence in the record, but apparently on the unfounded assumption that defendant had pursued minors through the Internet on previous occasions. The trial court did not give a reasoned explanation for its conclusion that this first-time offender presented a risk to commit another offense. (pp. 20-22)

4. The trial court also did not sufficiently explain its reason for placing particular emphasis on aggravating factor nine—the need for both specific and general deterrence. Although the Court does not suggest that aggravating factor nine cannot be credited here, the issue is how much weight should be given to that factor. In this case, the court did not adequately explain its decision to give that factor "particular emphasis." (pp. 22-23)

5. Defendant presented nine mitigating factors, and yet the court addressed only three. Evidence in the record -- if credited by the trial court -- might have supported a finding of some of the other factors. The court was obliged to give reasons for rejecting mitigating factors brought to its attention or for accepting them if sufficiently grounded in the evidence. In addition, the trial court did not engage in a qualitative analysis of the sentencing factors it found, which was essential before imposing a period of parole disqualification. Further, on the record before the Court, there is insufficient support for the trial court's conclusion that, clearly and convincingly, the aggravating factors substantially outweighed the mitigating factors. (pp. 23-26)

The judgment of the Appellate Division is **REVERSED**, defendant's sentences are **VACATED**, and the matter is **REMANDED** to the trial court to conduct a sentencing proceeding consistent with this opinion within thirty days. The new proceeding will include current and relevant information on an appropriate sentence.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA and SOLOMON; and JUDGE CUFF (temporarily assigned); join in JUSTICE ALBIN's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

WILLIAM A. CASE, JR., a/k/a
WILLIAM ANTHONY CASE,

    Defendant-Appellant.

> Argued October 7, 2014 – Decided December 2, 2014
>
> On certification to the Superior Court, Appellate Division.
>
> Michael J. Confusione argued the cause for appellant (Hegge & Confusione, attorneys).
>
> Kathleen E. Bond, Assistant Prosecutor, argued the cause for respondent (James P. McClain, Atlantic County Prosecutor, attorney; Deborah A. Hay, Special Deputy Attorney General, of counsel and on the brief).

    JUSTICE ALBIN delivered the opinion of the Court.

    The New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 to 2C:104-9, sets forth detailed sentencing guidelines to channel the discretion of trial judges to ensure fair and uniform sentences.  This approach is intended to minimize the potential for idiosyncratic and disparate sentencing.  Our judges are given wide discretion to sentence within the range prescribed by

a criminal statute, but that discretion is not unconstrained. In fixing a sentence within the statutory range, a judge must determine whether specific aggravating or mitigating factors are grounded in credible evidence in the record and then weigh those factors.  A period of parole disqualification may be imposed, but only if the judge clearly and convincingly determines that "the aggravating factors substantially outweigh the mitigating factors."  N.J.S.A. 2C:43-6(b).  Central to the success of this process is the requirement that the judge articulate the reasons for imposing sentence.

In this case, the sentencing judge found a critical aggravating factor based on unfounded assumptions rather than evidence in the record.  That unsupported factor was then used to justify not only a sentence at the higher end of the range, but also a parole disqualifier.  In addition, the judge failed to articulate reasons to justify the sentence -- in particular, how the aggravating and mitigating factors were qualitatively weighed in coming to the term of imprisonment for this first-time offender.  The Appellate Division affirmed this flawed sentencing process.

Accordingly, we are compelled to reverse the judgment of the Appellate Division, vacate the sentence, and remand for new sentencing proceedings.

4

I.

A.

At the conclusion of a bench trial in March 2012, a Superior Court judge convicted defendant, William A. Case, Jr., of five counts of second-degree attempted luring of a minor, N.J.S.A. 2C:13-6; five counts of third-degree attempted endangering the welfare of a child, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:24-4; and one count of fourth-degree attempted criminal sexual contact, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-3(b). Defendant was acquitted of second-degree attempted sexual assault, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2(c).[1] The convictions were based on Internet conversations between defendant and a law enforcement officer impersonating a fourteen-year-old female named "Amanda."

The State's primary witness was Detective Christopher Hallet of the Atlantic County Prosecutor's Office Computer Crimes Unit. In August 2008, Detective Hallet created a fictitious online profile of a fourteen-year-old female named Amanda. Detective Hallet assumed the identity of Amanda on the Internet. In the profile created for Amanda, Detective Hallet presented the photograph of a fourteen-year-old girl and

_____

[1] Defendant waived his right to a jury trial.

5

described her interests as "cheerleading" and "hanging with her friends."[2]

After Detective Hallet placed Amanda's profile in an Internet chat room, defendant directly contacted her through instant messaging. Instant messaging allowed defendant to engage in private Internet conversations with Amanda unobserved by others in the chat room. During his first conversation with Amanda on August 14, 2008, defendant identified himself as a twenty-five-year-old male from Absecon, and she identified herself as a fourteen-year-old female high school student from the Mays Landing area. Their hour-long conversation touched on intimate and sexually explicit subjects. Here are some examples.

Defendant asked Amanda whether she was a virgin and, at one point, commented that he would have asked her out if she were not so young. She replied, "it would be cool to go out with an older guy . . . with a driver's license." During this Internet conversation, defendant sent a photograph of himself and asked Amanda if he was "cute enough to jump, roll down on top of, and give [] a kiss." He also inquired about her sexual experiences, the size of her breasts, and whether she would "walk around naked for [him]." Their chat was sprinkled with Internet

_____

[2] The photograph was of a female police officer when she was fourteen years old.

6

abbreviations, such as LOL (laugh out loud), and emoticons, such as a smiley face and a face with a tongue sticking out. The conversation developed from defendant saying, "[m]aybe in a couple of years, we could hook up," to asking Amanda if she would "want to have sex." When Amanda inquired whether he wanted to have sex, he said, "yeah," and when she asked where, he said, "[y]our place . . . [o]r my place," but added, "the age thing scares me."

More than three weeks later, on September 8, 2008, defendant initiated a second hour-long Internet chat with Amanda and asked if she still wanted to "hook up." Again, defendant engaged in a sexually explicit conversation with Amanda. He also asked a number of times whether he could go to her home. At one point, he questioned whether she was "the cops" because he was not "about to lose [his] life because of this." Consistent with the first conversation, he asked if she would "get naked for" him and suggested that they could "fool around in the backseat" of his truck.

On September 17 and 22, 2008, defendant again initiated online chats with Amanda. In those conversations, defendant continued to ask Amanda sexually explicit questions. He also asked for directions to her house, and the two discussed the possibility of engaging in sexual acts. During their fifth and final online talk, on September 24, defendant and Amanda again

7

discussed possibly engaging in sexual acts. They agreed to meet that day at "The Brickworks" in Mays Landing. After defendant pulled his truck into The Brickworks parking lot, law enforcement officers took him into custody. Following his arrest, defendant was interviewed by the police. He claimed that he did not intend to "do anything with [Amanda]" and only "wanted to explain to her that this isn't right."

Defendant testified at his trial and offered a diminished-capacity defense. Defendant, then twenty-nine years old, stated that during his years as a professional firefighter and emergency medical technician (EMT), he experienced traumatic events that caused him to suffer a mental breakdown. He explained that the Internet was a "fantasy world[,] . . . an escape from what [he] had not been able to do out in society," and that he would not ordinarily speak with persons who identified themselves as minors. He repeated that he did not intend to engage in sexual acts with Amanda. He denied using the Internet to search for "child pornographic materials," and indeed the police did not find any such materials on his home computer or in his apartment, which were searched pursuant to a warrant.

Defendant called three mental health experts to support his diminished-capacity defense. Dr. Kenneth J. Weiss, a psychiatrist, testified that defendant suffered from a number of

mental disorders, including post-traumatic stress disorder (PTSD). He explained that there was no "clinical evidence that [defendant] would ever have any interest in fourteen-year-old girls in reality." Dr. Elliot Atkins, a psychologist, testified that defendant's work experience caused him "elevated levels of anxiety from the post-traumatic stress disorder," which, in turn, led him to create a "fantasy world" on the Internet and to chat with Amanda. He also opined that defendant was chronically depressed and suicidal. Another psychologist, Dr. John Hubert White, who treated defendant for PTSD, expressed his opinion that despite defendant's Internet chats with Amanda, defendant did not intend to have "sexual relations with her." All three experts expressed the view that defendant did not possess the requisite mental state to commit the crimes charged.

The State's expert psychiatrist, Dr. Daniel Paul Greenfield, rejected the validity of a diminished-capacity defense, finding that defendant "engage[d] in a series of purposeful goal-directed behaviors" that led him to an intended sexual liaison with a minor.

The defense also called a number of character witnesses, fellow firefighters, family members, and friends, who testified to defendant's trustworthiness and good reputation in the community.

B.

9

In finding defendant guilty of attempted luring, attempted child endangerment, and attempted criminal sexual contact, the trial court rejected the defense of diminished capacity. The court accepted the testimony that events witnessed by defendant as an EMT and firefighter, such as the discovery of dead children, had "a traumatic effect" on him. The court also accepted the diagnoses of the expert witnesses, all of whom agreed that defendant suffered from "PTSD, moderate to severe depression, and lack of judgment." The court, however, did not believe that defendant's psychological problems deprived him of the ability to engage in purposeful conduct. The court found that defendant's ability to perform as an exemplary firefighter and EMT was inconsistent with the notion that he was "so traumatized by the events in his life" that he was living in a fantasy world on the Internet or impaired in understanding the nature of his online conduct.

The court rejected the psychiatric and psychological expert testimony of the defense witnesses and adopted the testimony offered by the State's expert, Dr. Greenfield. The court concluded that "defendant acted purposely, intentionally, and with the goal to meet and have a sexual liaison with a fourteen-year-old girl." The court highlighted that defendant was able to navigate through the Internet and into chat rooms, that he did so since he was fifteen years old, and that he visited a

10

chat room "entitled older for younger." In particular, the court noted that defendant had visited Internet chat rooms "to speak to females for ten years" before conversing online with Amanda. The court also emphasized that defendant, at age twenty-five, was well versed in using Internet jargon and emoticons. Finally, the court dismissed defendant's explanation given to police after his arrest -- that "he thought [Amanda] was eighteen or nineteen" and that "he had no intentions of having sex with Amanda," but "merely [intended] to teach her a lesson."

C.

The same judge who presided over the bench trial imposed sentence. Before sentencing, defendant presented nine mitigating factors: "defendant's conduct neither caused nor threatened serious harm," N.J.S.A. 2C:44-1(b)(1); "defendant did not contemplate that his conduct would cause or threaten serious harm," N.J.S.A. 2C:44-1(b)(2); "defendant acted under a strong provocation," N.J.S.A. 2C:44-1(b)(3); "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense," N.J.S.A. 2C:44-1(b)(4); "[t]he victim of the defendant's conduct induced or facilitated its commission," N.J.S.A. 2C:44-1(b)(5); "defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the

11

commission of the present offense," N.J.S.A. 2C:44-1(b)(7); "defendant's conduct was the result of circumstances unlikely to recur," N.J.S.A. 2C:44-1(b)(8); "[t]he character and attitude of the defendant indicate that he is unlikely to commit another offense," N.J.S.A. 2C:44-1(b)(9); and "[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents," N.J.S.A. 2C:44-1(b)(11).

The State presented two aggravating factors: "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), and "[t]he need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9). In support of those aggravating factors, the State contended that over an approximately six-week period, "defendant doggedly went on the computer on at least five occasions . . . in search of [the] same young girl." The State submitted that defendant did not meet Amanda online by happenstance, but instead "[made] a concerted effort to reach [out] to her."

Defense counsel argued that neither aggravating factor applied because the offense was aberrational -- no evidence was "presented that [defendant] ever committed an offense like this before." The defense stressed that, at the time of the offense, defendant was suffering from PTSD and depression and that, in the four years since his arrest, he had been offense-free. The defense also noted that defendant had led a law-abiding and

12

honorable life as a firefighter, was engaged to be married, and was the father of three young children -- one just three weeks old -- whom he supported. Finally, the defense contended that deterrence was not a factor because defendant was subject to Megan's Law registration and community supervision for life.

Speaking directly to the court, defendant expressed remorse and stated that he remained in therapy to "address [his] issues" and "to become a better person." One of defendant's sisters told the court that he was a "great brother" as well as a "good father" and "good uncle." Another sister recited the hardships her family had suffered since defendant was taken into custody. Last, his mother stated that defendant "was doing well in treatment" and had "kept his family intact." She expressed her fear that her son would "come out of [prison], a broken man, more broken than he is right now."

In imposing sentence, the court generally incorporated the findings it made when it adjudicated defendant guilty of the various offenses related to the Internet chats. The court specifically found mitigating factor seven applicable because defendant had no history of criminal, juvenile, or domestic-violence offenses and because he otherwise had led a law-abiding life. The court rejected the defense's contention that "defendant did not contemplate that his conduct would cause . . . serious harm," mitigating factor two, N.J.S.A. 2C:44-1(b)(2),

13

stating that it had "discounted the testimony of the defense experts" in convicting defendant. The court also rejected the defense's argument in support of mitigating factor five, N.J.S.A. 2C:44-1(b)(5) -- that Detective Hallet induced or facilitated the crime. The court noted that defendant initiated the conversations with Amanda and steered them in a sexual direction. However, the court did not give any reasons for disregarding the remaining mitigating factors advanced by defendant.

The court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk of defendant committing another offense), and nine, N.J.S.A. 2C:44-1(a)(9) (need for deterrence). The court placed "particular weight on aggravating factor three" for the following reasons: (1) "defendant admitted that he had been going into Internet chatrooms to speak to females for ten years" before his online encounter with Amanda; (2) defendant "testified that at least one of the chatrooms he entered was titled, 'Older for Younger'"; (3) defendant was "not a novice in the world of Internet chatrooms"; (4) defendant was "well-versed" in speaking on the Internet and in using "emoticons"; and (5) defendant used instant messaging rather than engage Amanda in conversation in the chat room.

The court also placed "particular emphasis on aggravating factor nine" because "adult predators of young girls must be

14

deterred" and because the "need to deter this particular defendant and others from these types of crimes is substantial." Without any further analysis, the court then determined that the aggravating factors substantially outweighed the sole mitigating factor that defendant had previously led a law-abiding life.

The court imposed concurrent eight-year prison terms with a four-year period of parole disqualification on the five counts of attempted luring; concurrent three-year terms with a one-year parole disqualifier on the five counts of attempted child endangerment; and a concurrent one-year term on the one count of attempted sexual contact. Defendant received an aggregate custodial term of eight years with a four-year parole disqualifier. The court imposed $11,305 in assessments, penalties, and surcharges.

In addition, the court ordered that defendant be placed on parole supervision for life, N.J.S.A. 2C:43-6.4; that he register as a sex offender, N.J.S.A. 2C:7-2; that he forfeit his public employment as a firefighter, N.J.S.A. 2C:51-2; that he not possess a device with Internet capability unless required for employment, N.J.S.A. 2C:43-6.6; and that he submit to random searches of his computer or other Internet-capable device.

Defendant appealed.

D.

The Appellate Division affirmed defendant's conviction and sentence in an unpublished opinion.[3]  The panel rejected defendant's argument that his sentence was excessive.  The panel was "satisfied the sentencing judge made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably credible evidence in the record, and applied the correct sentencing guidelines."

We granted defendant's petition for certification "limited to the issue of whether defendant was properly sentenced to a discretionary parole disqualifier."  State v. Case, 216 N.J. 361 (2013).

II.

A.

Defendant argues that the court placed undue weight on aggravating factors three (likely to reoffend) and nine (need to deter) and overlooked mitigating factors supported by the record.  Defendant contends that in finding aggravating factor three, the court engaged in sheer speculation by suggesting that defendant had used the Internet in the past to target underage females.  Defendant also argues that in finding aggravating

---

[3] Defendant raised a number of issues that he contended undermined the legitimacy of the criminal convictions rendered by the trial court.  None of those issues are germane to the appeal before us.

16

factor nine, the court disregarded the constraints placed on defendant through parole supervision for life, Megan's Law registration, and Internet restrictions. Defendant also claims that the court paid scant attention to his psychiatric illnesses and, in particular, gave little consideration to the hardship his imprisonment would have on his young children. Defendant maintains that the court failed to recognize sentencing factors grounded in the evidence or to weigh qualitatively those it did find. Last, defendant claims the court erred in not adequately articulating its reasons for imposing sentence. According to defendant, in justifying the imposition of a parole disqualifier, the court "simply announced" that the aggravating factors substantially outweighed the mitigating factors.

B.

The State submits that the court did not abuse its discretion in imposing a four-year period of parole disqualification. The State disputes the contention that the court "merely enumerate[d] the relevant factors" and contends that adequate reasons were placed on the record to explain how the court arrived at the sentence. The State argues that none of the mitigating factors advanced by defendant, other than mitigating factor seven, finds support in the record. In light of the court's imposition of concurrent prison terms, the State

17

maintains that the sentence was fair and does not "shock the judicial conscience."

III.

A.

We begin with an overview of the principles and structure of the sentencing scheme of the Code of Criminal Justice. One of the Code's paramount goals is to eliminate arbitrary and idiosyncratic sentencing so that similarly situated defendants receive comparable sentences. State v. Natale, 184 N.J. 458, 485 (2005). Ensuring a reasonable degree of uniformity in sentencing is an essential feature of our system of justice. Ibid.

To achieve that end, the Code has established a framework of structured discretion within which judges exercise their sentencing authority. Ibid. Crimes are classified as first, second, third, or fourth degree crimes in descending order of seriousness, and each degree contains a range within which a defendant may be sentenced. N.J.S.A. 2C:43-6(a). Although judges generally exercise their discretion within the given range, State v. Roth, 95 N.J. 334, 359 (1984), in specifically defined circumstances, judges may impose sentences outside of the statutory range.[4] In this case, defendant was found guilty

---

[4] Under circumstances permitted by the Code, judges may sentence a defendant to an extended-term sentence above the ordinary

18

of attempted luring, a second-degree crime with a range of imprisonment between five and ten years, N.J.S.A. 2C:43-6(a)(2); attempted child endangerment, a third-degree crime with a range of between three and five years, N.J.S.A. 2C:43-6(a)(3); and attempted sexual contact, a fourth-degree crime with a range of up to eighteen months, N.J.S.A. 2C:43-6(a)(4).

In determining the appropriate sentence to impose within the range, judges first must identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) that apply to the case. State v. Fuentes, 217 N.J. 57, 72 (2014). The finding of any factor must be supported by competent, credible evidence in the record. Roth, supra, 95 N.J. at 363. Speculation and suspicion must not infect the sentencing process; simply put, the finding of aggravating or mitigating factors must be based on evidence.

Mitigating factors that "are called to the court's attention" should not be ignored, State v. Blackmon, 202 N.J. 283, 297 (2010), and when "amply based in the record . . . , they must be found," State v. Dalziel, 182 N.J. 494, 504 (2005). In short, mitigating factors "supported by credible evidence"

---

range, State v. Pierce, 188 N.J. 155, 161 (2006), to a "prison term appropriate to an offense one degree lower," State v. Megargel, 143 N.J. 484, 512 (1996), or even to a probationary term for a crime with a presumption of incarceration, State v. Jarbath, 114 N.J. 394, 414-15 (1989).

are required to "be part of the deliberative process." Dalziel, supra, 182 N.J. at 505.

Whether a sentence should gravitate toward the upper or lower end of the range depends on a balancing of the relevant factors. Fuentes, supra, 217 N.J. at 72. "[W]hen the mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range." Natale, supra, 184 N.J. at 488. The balancing process, however, is more than counting whether one set of factors outnumbers the other. Fuentes, supra, 217 N.J. at 72. Rather, the court must qualitatively assess the relevant aggravating and mitigating factors, assigning each factor its appropriate weight. Id. at 72-73.

To facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence. Id. at 74; see also R. 3:21-4(g) ("[T]he judge shall state reasons for imposing [a] sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence." (emphasis added)). Appellate review of sentencing is deferential, and appellate courts are cautioned not to substitute their judgment for those of our sentencing courts. State v. Lawless, 214 N.J. 594, 606 (2013). But the deferential standard of review applies only if the trial

20

judge follows the Code and the basic precepts that channel sentencing discretion. When the aggravating and mitigating factors are identified, supported by competent, credible evidence in the record, and properly balanced, we must affirm the sentence and not second-guess the sentencing court, Natale, supra, 184 N.J. at 489, provided that the sentence does not "shock the judicial conscience," Roth, supra, 95 N.J. at 365. On the other hand, if the trial court fails to identify relevant aggravating and mitigating factors, or merely enumerates them, or forgoes a qualitative analysis, or provides little "insight into the sentencing decision," then the deferential standard will not apply. See State v. Kruse, 105 N.J. 354, 363 (1987).

We now briefly turn to our jurisprudence on discretionary parole disqualifiers.

B.

The sentencing court, when "clearly convinced that the aggravating factors substantially outweigh the mitigating factors," may sentence a defendant to "a minimum term not to exceed one-half of the term" allowed by the statute. N.J.S.A. 2C:43-6(b). In doing so, however, the court must "specifically place on the record the aggravating factors . . . which justify the imposition of a minimum term." N.J.S.A. 2C:44-1(f)(1).

In Kruse, supra, we compared the standard for sentencing to a term within the range (whether the court is persuaded "there

21

is a preponderance of aggravating or mitigating factors") to the standard for imposing a parole disqualifier (whether the court is "clearly convinced that the aggravating factors substantially outweigh the mitigating factors"). 105 N.J. at 359 (internal quotation marks omitted); see N.J.S.A. 2C:43-6(b). We emphasized that "[t]he different standard reflects the fact that 'periods of parole ineligibility are the exception and not the rule. They are not to be treated as routine or commonplace.'" Ibid. (quoting State v. Martelli, 201 N.J. Super. 378, 382-83 (App. Div. 1985)). Again, critical to the sentencing process and appellate review is the need for the sentencing court to explain clearly why an aggravating or mitigating factor presented by the parties was found or rejected and how the factors were balanced to arrive at the sentence. Fuentes, supra, 217 N.J. at 73.

IV.

Applying the principles of our sentencing jurisprudence here requires that we vacate defendant's sentence.

A.

First, the weight given by the trial court to aggravating factor three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), was based not on credible evidence in the record but apparently on the unfounded assumption that defendant had pursued minors through the

22

Internet on previous occasions. Although defendant admitted to visiting Internet chat rooms since he was fifteen years old and communicating with females -- and at one point visiting a chat room entitled, "Older for Younger" -- the record does not support the conclusion that he was consorting with or trolling for minors as an adult. Communicating on the Internet through slang and the use of emoticons is not evidence of a penchant for criminal activity. Although defendant admitted to visiting a chat room, "Older for Younger," the record does not reveal defendant's age when he did so or the nature of the chat room. Indeed, at all times, defendant denied ever seeking to sexually importune a minor.

At one point during the first Internet chat, Amanda asked defendant if he ever had a younger girlfriend, and he responded, no, and then expanded by saying that he did have two prior girlfriends who were about three years younger. During his police interview after his arrest, defendant denied chatting with "any other younger girls." Defendant, moreover, denied having "any kid porn" on his computer, and a police search of his computer and home executed pursuant to a warrant evidently did not uncover any such incriminating evidence. Tellingly, during the trial, in framing a question to the State's expert, the trial judge referred to the lack of evidence tying defendant to other incidents similar to the one with Amanda: "all we know

23

[is] that [defendant] was talking to women. We don't know anything about it, whether it was talking to children . . . all we know is he was on the [I]nternet . . . for a period of ten years."

Additionally, the court's finding of mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) -- that defendant had led a law-abiding life and had no history of prior criminal or delinquent conduct -- stood as a counterpoise to the finding of a risk that defendant was likely to commit another offense. Although we do not presume that aggravating factor three cannot coexist with mitigating factor seven, here the trial court's finding of this aggravating factor is not grounded in competent, credible evidence in the record. See Roth, supra, 95 N.J. at 363. The court did not give a reasoned explanation for its conclusion that this first-time offender presented a risk to commit another offense.

B.

The trial court also did not sufficiently explain its reason for placing "particular emphasis on aggravating factor nine" -- the need for both specific and general deterrence. (Emphasis added). We share the trial court's view that "adult predators of young girls must be deterred," but we also have recognized "that general deterrence unrelated to specific deterrence has relatively insignificant penal value." Jarbath,

24

supra, 114 N.J. at 405; see State v. Gardner, 113 N.J. 510, 519-20 (1989) ("'[T]he need to deter' . . . encompasses two types of deterrence:  deterring (a) 'the defendant' and (b) 'others' from committing crime.").  The undisputed medical testimony was that this first-time offender suffered from PTSD and depression, and in the four years between his arrest and trial, he underwent psychological therapy.  In those four years, by all accounts, he was law-abiding and helping to raise and support a family.  Upon his release from prison, moreover, defendant will be subject to parole supervision for life, Megan's Law registration, and random searches of his computer.  Although we do not suggest that aggravating factor nine cannot be credited here, the issue is how much weight should be given to that factor.  In this case, the court did not adequately explain its decision to give that factor "particular emphasis."

C.

At his sentencing, defendant presented nine mitigating factors for the court's consideration, and yet the court addressed only three, finding mitigating factor seven and rejecting mitigating factors two and five.  Mitigating factors "called to the court's attention" should not be simply ignored. Blackmon, supra, 202 N.J. at 297.  It is clear that some mitigating factors deserved thoughtful consideration.  For example, the court should have explained why it was rejecting

25

mitigating factor eight ("defendant's conduct was the result of circumstances unlikely to recur"), mitigating factor nine ("[t]he character and attitude of the defendant indicate that he is unlikely to commit another offense"), and mitigating factor eleven ("[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents"). See N.J.S.A. 2C:44-1(b)(8), (9), and (11). Evidence in the record -- if credited by the trial court -- might have supported a finding of those factors.

At the time of trial, defendant was twenty-nine years old and lived with his fiancée, who was pregnant with their baby, and with their two-year-old daughter and his fiancée's seven-year-old daughter. Defendant had worked in Atlantic City as a firefighter and emergency medical technician, and also had served as a volunteer firefighter. Fellow workers and friends, at trial, spoke of his otherwise good character and reputation.

We do not suggest that the trial court was required to credit other mitigating factors beyond those it found. But the court was obliged to give reasons for rejecting those mitigating factors brought to its attention or accepting them if sufficiently grounded in the evidence. Additionally, the court was required to explain the weight it assigned to the factors it found.

D.

26

We also conclude that the trial court did not engage in a qualitative analysis of the sentencing factors it found, as required by Kruse. The qualitative balancing of the factors was essential before imposing a period of parole disqualification. See Fuentes, supra, 217 N.J. at 72-73. We realize that any qualitative analysis would have been defective because the court imported into aggravating factor three the unfounded assumption that defendant had previous online encounters with minors. Further, on the record before us, there is insufficient support for the trial court's conclusion that, clearly and convincingly, the aggravating factors substantially outweighed the mitigating factors. See N.J.S.A. 2C:43-6(b).

We further note that the sentences imposed on the luring and endangering convictions are internally inconsistent. The court did not explain how, while weighing the same sentencing factors, it arrived at a sentence above the midpoint for attempted luring (eight years in the second-degree range between five and ten years) and below the midpoint for attempted endangering (three years in the third-degree range between three and five years).

In conclusion, the sentencing proceeding in this case was flawed for multiple reasons, and therefore we are compelled to vacate the sentences on all charges and remand for a new sentencing hearing.

27

V.

At the new sentencing hearing, the court should give full consideration to all relevant evidence and all relevant sentencing factors as of the day defendant stands before the court.  State v. Randolph, 210 N.J. 330, 354 (2012).  As such, the sentencing court may consider defendant's conduct and comportment while imprisoned, whether positive or negative.  Defendant is entitled to bring to the court's attention any rehabilitative or other constructive measures he has taken in the intervening years.  The State, likewise, is not limited in its presentation.  The only restriction placed on both parties is that the evidence presented be competent and relevant.

VI.

For the reasons expressed, we reverse the judgment of the Appellate Division and vacate defendant's sentences for attempted luring, attempted child endangerment, and attempted sexual contact.  We remand to the trial court to conduct a sentencing proceeding consistent with this opinion within thirty days.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion.

28

SUPREME COURT OF NEW JERSEY

NO. ___A-45___                          SEPTEMBER TERM 2013

ON CERTIFICATION TO         Appellate Division, Superior Court

_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

          v.

WILLIAM A. CASE, JR., a/k/a
WILLIAM ANTHONY CASE,

     Defendant-Appellant.

DECIDED          December 2, 2014
_____
        Chief Justice Rabner                    PRESIDING

OPINION BY          Justice Albin
_____

CONCURRING/DISSENTING OPINIONS BY  _____

DISSENTING OPINION BY  _____

| CHECKLIST | REVERSE/ VACATE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

29