**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4057-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NICHOLAS M. IVES, a/k/a NAZIR
BAY, a/k/a NAZAIR BEY,

    Defendant-Appellant.

_____

Submitted February 9, 2017 — Decided  June 8, 2017

Before Judges O'Connor and Whipple.

On appeal from Superior Court of New Jersey,
Law Division, Cumberland County, Indictment
No. 13-02-0154.

Joseph E. Krakora, Public Defender, attorney
for appellant (Laura B. Lasota, Assistant
Deputy Public Defender, of counsel and on the
brief).

Jennifer Webb-McRae, Cumberland County
Prosecutor, attorney for respondent (Kim L.
Barfield, Assistant Prosecutor, of counsel and
on the brief).

PER CURIAM

Defendant Nicholas Ives, also known as Nazir Bey, appeals from an April 10, 2015 judgment of conviction after a jury trial. We affirm the conviction and remand for resentencing.

Defendant was a senior corrections officer at Bayside State Prison (Bayside). In September 2011, Robert Percy, an inmate, gave a corrections officer a bundle of heroin with a note attached, implicating defendant in prison drug transactions. Thereafter, the New Jersey Department of Corrections Special Investigations Division began investigating defendant. Percy told investigators defendant provided him with heroin, which Percy paid for by arranging for his wife, A.P.,[1] to send money to N.P., the wife of fellow inmate Vincent Heredia. Defendant and Heredia were childhood friends and it was alleged defendant picked up payments from N.P.'s home.

Defendant was indicted for second-degree official misconduct, contrary to N.J.S.A. 2C:30-2(a), and third-degree conspiracy to distribute a controlled dangerous substance (CDS), contrary to N.J.S.A. 2C:5-2 and 2C:39-5(a)(1). Percy testified at trial, telling the jury he was an addict currently serving a thirty-three-year prison term. He recounted it was easy to obtain heroin in the various correctional facilities where he had been assigned.

---

[1] We use initials to protect the identity of non-party witnesses.

While at Bayside, Heredia introduced Percy to defendant to obtain heroin. Percy received the heroin from defendant in the kitchen where defendant was stationed. According to Percy, defendant set up a system to tape the drugs under a food cart where Percy would retrieve them. Defendant alerted Percy to the presence of drugs under the cart by ripping the edge of the food order sheet on top of the cart.

Percy testified he lied to A.P., telling her he needed money for legal fees and asking her to write three checks for $1500 each and to send them to N.P. The checks were made payable to N.P. and defendant's mother.

A.P. also testified. She told the jury she wrote the checks to N.P. and defendant's mother after Percy told her both worked for lawyers who he hired. N.P. testified Heredia called her and told her to expect a "lawyer" to come to her house to turn over money for his appeal. She was reluctant to do so, but later agreed after she spoke twice over the phone to an inmate N.P. identified as "Pop-pop," who told her something was "coming her way" and gave her messages for the "lawyer." N.P. identified defendant as the "lawyer" who came to her house, and identified her signature as well as defendant's signature on the back of canceled checks. N.P. identified a check made out to her for $1500 from A.P. and testified the check was the mail she discussed with "Pop-pop."

Defendant came to the house to pick up that check and endorsed the check to himself so he could cash it. According to N.P., defendant came to her house several more times but only to pick up unopened envelopes sent to her house under the care of a different name. A Wells Fargo bank employee provided testimony for the jury tracing N.P.'s three checks to deposits into defendant's bank account.

Defendant testified and acknowledged he and Heredia had grown up together but no longer socialized as adults. When Heredia was incarcerated in Bayside, Heredia worked in the kitchen where defendant was assigned. Defendant testified Heredia wanted a new life and asked defendant to help him get a lawyer for his appeal. Defendant testified he declined to help because of his position as a corrections officer but later agreed to ask his mother, who Heredia knew, if she would help him contact a lawyer. Defendant told Heredia his mother would assist him, and Heredia gave defendant the names of two lawyers, which defendant passed on to his mother. Heredia told defendant he would send the money for the lawyers to defendant's mother through a family member.

Defendant testified that, due to N.P.'s reluctance to assist in getting money for the lawyers, he agreed to pick up money from N.P. He acknowledged receiving the three checks, one of which was endorsed to him and two others payable to his mother, which he deposited in his Wells Fargo account. He testified he later gave

4

cash to his mother. He testified Heredia's attorney wanted $10,000 for the appeal; however, when Heredia was transferred to another prison, defendant's mother returned the money to defendant, and he subsequently returned it to N.P. Defendant also acknowledged guards and inmates at Bayside called him "the lawyer." He denied engaging in drug transactions and denied having contact with Percy.

Defendant's mother also testified. She corroborated defendant's account of trying to assist Heredia to hire a lawyer, claiming she received the cash from defendant and kept it in a safe at her house, but later returned it to defendant who returned it to N.P. N.P. testified she never received money back from defendant.

The jury found defendant guilty of both charges on October 8, 2014. On March 31, 2015, the trial judge denied defendant's motion for a new trial, and after merging count two, conspiracy, into count one, official misconduct, sentenced defendant to a seven-year prison term with a five-year period of parole ineligibility. This appeal followed.

On appeal defendant raises the following arguments:

POINT I.

THE CONVICTIONS WERE CLEARLY AGAINST THE WEIGHT OF THE EVIDENCE, NECESSITATING REVERSAL. U.S. CONST. AMEND XIV; N.J. CONST. (1947), ART. 1, PAR. 10.

POINT II.

THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

I.

Defendant argues the trial court erred in denying his motion for a new trial pursuant to Rule 3:20-1. Specifically, he contends the convictions were against the weight of the evidence because Percy's testimony was not credible.

A jury verdict should not be set aside as against the weight of the evidence unless, when balanced against the jury's opportunity to assess a witness's credibility, there has been a clear and convincing manifest denial of justice. State v. Saunders, 302 N.J. Super. 509, 524 (App. Div.), certif. denied, 151 N.J. 470 (1997). "On a motion for a new trial, the objective is not to second-guess the jury but to correct the injustice that would result from an obvious jury error." Ibid.

"Unless no reasonable jury could have reached such a verdict, a reviewing court must respect a jury's determination." State v. Afanador, 134 N.J. 162, 178 (1993). When considering a motion to set aside the verdict, the court must review the evidence to determine "whether any trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present." Ibid. (quoting State v. Carter, 91 N.J. 86, 96 (1982)). When a jury reaches its verdict based on its assessment

of the witnesses' credibility, the verdict cannot be set aside unless there is clear evidence of "a mistake, partiality, passion or prejudice." State v. Haines, 20 N.J. 438, 447 (1956).

We are satisfied that there is no such evidence in the record. The jury was in the best position to determine the credibility of Percy's testimony. The jury heard the testimony about Percy's drug use in prison and his manipulation of others to secure drugs in prison, including lying to his wife. Moreover, the lies Percy told his wife are not inconsistent with the plan set in motion to secure heroin in prison by paying defendant. After considering all of the evidence presented at trial, we are satisfied that a jury could reasonably find defendant guilty of both charges. Therefore, defendant's convictions were not against the weight of the evidence, and there was no miscarriage of justice warranting a new trial under Rule 3:20-1.

## II.

Finally, defendant argues his sentence was excessive. We are constrained to vacate defendant's sentence and remand for resentencing, as the judge's findings on the applicable aggravating and mitigating factors conflict and not supported by the record.

As long as the sentence is based on competent credible evidence and fits within the statutory framework, trial judges

have broad sentencing discretion.  State v. Dalziel, 182 N.J. 494, 500 (2005).  Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention" and "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 64-65 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010); State v. Fuentes, 217 N.J. 57, 72, 74 (2014)).  "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court.  Id. at 65; see State v. O'Donnell, 117 N.J. 210, 215-16 (1989); State v. Roth, 95 N.J. 334, 364-65 (1984).

The sentencing judge found aggravating factors three (the risk of re-offense), six (the extent of defendant's prior criminal record), and nine (the need for deterrence).  The judge also found mitigating factor seven, no prior history of delinquency or criminal activity.  In finding aggravating factor three the judge stated,

> He is . . . 39 years of age.  There is no juvenile record.  The adult record consists of prior arrests, which resulted in the present indictable conviction.  There is some risk that he's going to commit another offense.  I will give that moderate weight.

The judge found mitigating factor seven, defendant has no real prior history of criminal activity.

A-4057-14T3

The judge's finding of aggravating factor three and mitigating factor seven are in conflict and are not supported by competent, credible evidence in the record. While it is true a finding of aggravating factor three can coexist with a finding of mitigating factor seven, that finding must be "grounded in competent, credible evidence in the record." Case, supra, 220 N.J. at 67. The judge did not provide a reasoned explanation as to how he found defendant presented a risk to commit another offense when this was defendant's first indictable conviction. As such, we are constrained to vacate defendant's sentence and remand for resentencing.

In remanding for resentencing, we do not express an opinion on whether the court should again find aggravating factor three and mitigating factor seven. Additionally, we do not express an opinion on the length of the sentence imposed. On remand, we require only that the court reconsider its determination as to aggravating factor three and mitigating factor seven, make appropriate findings supporting its determination, and resentence defendant based on its weighing of the aggravating and mitigating factors.

Defendant's conviction is affirmed and his sentence is vacated. We remand for resentencing in accordance with this opinion. We do not retain jurisdiction.

9

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4057-14T3