**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3989-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NAIM JONES, a/k/a
SHAQUAM CLEMONS,

    Defendant-Appellant.

_____

Submitted March 4, 2025 – Decided March 26, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 17-07-1974 and 17-07-1977.

Afonso Archie Law, PC, attorneys for appellant (Troy A. Archie, on the briefs).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Assistant Prosecutor, of counsel; Elijah Bland, Legal Intern, appearing pursuant to Rule 1:21-3(b), on the brief).

PER CURIAM

This case returns to us after we affirmed defendant Naim Jones's convictions for first-degree conspiracy to commit murder and related weapons possession offenses stemming from a 2017 gang-related shooting that resulted in the death of William Porter IV, "who died from gunshot wounds sustained in a parking lot across the street from a nightclub in Newark." State v. Jones, A-5706-18 (App. Div. Nov. 3, 2022) (slip op. at 3-4, 15-16). As a result of the homicide, an Essex County grand jury returned an indictment charging Jones and two codefendants, Hakeem Maloney and Rashan M. Jackson, with:

> first-degree conspiracy to commit murder, contrary to N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1) to (2) (count one); first-degree murder, contrary to N.J.S.A. 2C:11-3(a)(1) to (2) (count two); second-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b) (count three); second-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a) (count four); first-degree promoting organized street crime, contrary to N.J.S.A. 2C:33-30 (count five (Maloney and Jones)); third-degree conspiracy to hinder, contrary to N.J.S.A. 2C:5-2 and N.J.S.A. 2C:29-3 (count six (Jackson)); and third-degree hindering apprehension or prosecution, contrary to N.J.S.A. 2C:29-3(a)(3) (count seven (Jackson)). The grand jury also charged Maloney and Jones in separate indictments with first-degree unlawful possession of a weapon by a person with a prior conviction under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, contrary to N.J.S.A. 2C:39-5(j).
>
> [Id. at 3-4 (citations reformatted).]

We recounted in our unpublished opinion that during the joint trial of all three defendants,

> [t]he State presented evidence that Jackson and his codefendants, Jones and Maloney, were all members of the Bloods gang. The State's theory of the case was that Jones and Maloney were higher-ranking members of the Bloods and Jackson's superiors. The State maintained that Jones and Maloney either gave Jackson permission to shoot Porter or instructed him to shoot Porter, who was a member of the Crips, a rival gang.
>
> [Id. at 15-16.]

"Jackson testified at trial and admitted to shooting Porter as revenge for the death of his older brother." Id. at 15. Although Jackson admitted being a "member of the Bloods," he "denied knowing whether Jones or Maloney were members" and "denied that Jones or Maloney had any involvement in Porter's death." Id. at 19-20.

> The jury found Jackson guilty on all five counts against him. As for Maloney and Jones, the jury found them both guilty on counts one (conspiracy to commit murder), three (unlawful possession of a weapon), and four (possession of a weapon for an unlawful purpose). The jury hung on counts two (murder) and five (promoting street crime). Immediately after the verdict, Maloney and Jones were tried together before, and found guilty by, the same jury on the unlawful possession of a weapon by a person with a prior NERA conviction charge.
>
> [Id. at 4-5.]

3

At sentencing, "[a]fter finding that Jones was extended term eligible as a second firearm offender under N.J.S.A. 2C:44-3(d), the judge sentenced Jones on count one, conspiracy to commit murder, to life in prison with an eighty-five percent period of parole ineligibility pursuant to NERA," and "to a consecutive ten-year term in prison with a five-year period of parole ineligibility for the unlawful possession of a weapon by a person with a prior conviction." Jones, slip op. at 6. Counts two and five were dismissed and the remaining counts merged. Id. at 4-5.

On appeal, Jones challenged his extended term sentence.

> He argue[d] that the trial judge failed to specify whether he was sentencing defendant to a discretionary persistent-offender extended term under N.J.S.A. 2C:44-3(a) or whether he was imposing a mandatory Graves Act extended term pursuant to N.J.S.A. 2C:44-3(d). He assert[ed] that under N.J.S.A. 2C:44-3(d), a trial judge may only impose a mandatory Graves Act extended term for certain enumerated offenses. Conspiracy to commit murder under N.J.S.A. 2C:5-2 is not one of these enumerated offenses. Therefore, Jones contend[ed] the judge erred by considering the Graves Act. Because the record does not clearly indicate whether the judge sentenced him to a discretionary extended term with a sentencing range of ten years to life, Jones argue[d] that he must be resentenced.
>
> [Jones, slip op. at 83.]

The State conceded the point, and we agreed with Jones's contention. Ibid. "We therefore remand[ed] for resentencing so that the judge assigned [could] consider whether to impose a discretionary extended term upon Jones." Ibid.

On remand, the trial judge determined Jones qualified as a persistent offender based on his prior criminal convictions, N.J.S.A. 2C:44-3(a),[1] and resentenced him for conspiracy to commit murder to a discretionary extended term of seventy-five years in prison, subject to NERA. The judge imposed a concurrent sentence of ten years in prison, with a five-year period of parole ineligibility, each on possession of a weapon for an unlawful purpose and unlawful possession of a weapon by a person with a prior NERA conviction. The remaining count was merged. The judge entered a conforming judgment of conviction on July 31, 2023, and this appeal followed.

On appeal, Jones raises the following points for our consideration:

> POINT I
>
> DEFENDANT NAIM JONES'[S] SENTENCE BY THE SUPERIOR COURT OF NEW JERSEY IS AN UNFAIR SENTENCE IN LIGHT OF THE CIRCUMSTANCES PRESENTED ON RECORD AND IT AMOUNTS TO A DE[ ]FACTO LIFE SENTENCE IN PRISON WHICH IS EXCESSIVE GIVEN THAT THE COURT FAILED TO GIVE

---

[1] Jones did not dispute his status as a persistent offender under N.J.S.A. 2C:44-3(a) either in the remand proceedings or here on appeal.

CERTAIN FACTORS THEIR APPROPRIATE AND QUALIFIED WEIGHT IN ORDER TO ARRIVE AT THE EXCESSIVE TERM IMPOSED.

POINT II

THE COURT IMPERMISS[IBLY] USED THE EQUIV[A]LENT OF ACQUITTED CONDUCT IN ITS SENTENCING ANALYSIS.

Based on the record and the governing legal principles, we reject each point and affirm.

Well-settled principles inform our review. We review sentences "in accordance with a deferential standard," State v. Fuentes, 217 N.J. 57, 70 (2014), and are mindful that we "should not 'substitute [our] judgment for those of our sentencing courts,'" State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)). Thus, we will

> affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

In imposing sentence on the remand, the judge found aggravating factors three, five, six, and nine based on the high risk of re-offense, the substantial

6

likelihood that defendant was involved in organized criminal activity, the extent

of defendant's prior criminal record, and the need for deterrence, respectively.

See N.J.S.A. 2C:44-1(a)(3), (5), (6), (9).  In support, as to aggravating factors

three and six, the judge recounted:

> As a juvenile, you have [twenty-nine] petitions and ten adjudications. . . . You[ have] been arrested [twenty-four] times, including the present offense.
>
> You have nine indictable convictions for unlawful possession of a weapon, handgun; two convictions for unlawful possession of a weapon; manufacturing/distribution of [controlled dangerous substances (CDS)], cocaine; distribution of CDS in a school zone; conspiracy to commit murder; aggravated manslaughter; unlawful possession of a weapon, air/spring pistol; unlawful possession of a weapon, machine gun; and aggravated assault.
>
> You have eight disorderly persons convictions. You[ have] had the benefit of probation eight times as a juvenile.  You have a history of two probation violations, one parole violation.

The judge underscored defendant's "extensive and violent criminal

history" and "highlight[ed] . . . that [defendant] had only been out of custody for

his aggravated manslaughter and conspiracy to commit murder convictions for

467 days before his criminal involvement in another homicide."  The judge

pointed out that because defendant's "criminal record . . . extend[ed] far beyond

the two prior convictions that are necessary to impose a discretionary persistent

offender extended term," consideration of defendant's prior criminal history to support aggravating factor six did not constitute impermissible double counting.

Regarding aggravating factor five, the judge explained:

> First, the circumstances of the offense, the trial record, as well as [defendant]'s conduct in the New Jersey State Prison since his incarceration sufficiently establishes that there[ is] a substantial likelihood that [defendant] was and is involved in organized crime.
>
> The [c]ourt does not agree with the defense's argument, that is, [a hung jury] on [c]ount [five] of the indictment[,] [f]irst[-]degree promoting organized street crime, precludes the [c]ourt from finding this aggravating factor because it is sufficiently supported by the record. Indeed, . . . it would be double-counting to apply this aggravating factor if [defendant] had been convicted of promoting organized street crime.

Next, as to aggravating factor nine, the judge expounded:

> The [c]ourt finds that there[ is] ample evidence in the record that there[ is] a need to specifically deter [defendant]. The [c]ourt highlights [defendant's] extensive and violent criminal record, his multiple prison sentences, the fact that he was on parole for an aggravated manslaughter and conspiracy to commit murder conviction at the time of the present offense, as well as his disciplinary record from New Jersey State Prison, which reflects multiple infractions.

The judge found no mitigating factors applied. In that regard, the judge rejected defendant's request "to consider [his] participation in volunteerism and community outreach with New Direction School of Change" while incarcerated

8                                          A-3989-22

as a non-statutory mitigating factor. Although the judge "acknowledge[d]" defendant's participation, he did not "find it very mitigating." After weighing the factors, the judge "f[ound] that the aggravating factors preponderate[d] over any mitigating factors weighing in favor of a custodial term towards the higher end of the range." Further, upon assessing defendant's "overall dangerousness to the public," the judge "f[ound] an extended term [was] necessary for the protection of the public given the circumstances of the present crime, as well as [defendant's] extensive criminal history . . . which include[d] a prior homicide offense."

In addition, the judge

> note[d] that, while not resulting in any formal punishment or criminal prosecution, [defendant] ha[d] engaged in problematic behavior in New Jersey State Prison, having been involved in an assault against a fellow inmate where he received an . . . administrative referral and had to be relocated within New Jersey State Prison, as well as threats against corrections officers which resulted in additional security precautions.

We discern no abuse of discretion in the judge's sentencing decision, which comports with the sentencing guidelines, is amply supported by credible evidence in the record, and does not shock the judicial conscience. "[A] sentencing court first must determine, pursuant to N.J.S.A. 2C:44-1(a) and (b), whether aggravating and mitigating factors apply. After balancing the factors,

9

the trial court may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010). "[W]hen the aggravating factors preponderate," as occurred here, "sentences will tend toward the higher end of the range." Case, 220 N.J. at 64-65 (quoting State v. Natale, 184 N.J. 458, 488 (2005)).

Defendant argues the new sentence is "excessive under the circumstances" and "unfair" because the judge relied on "speculative information" regarding defendant's institutional record at the New Jersey State Prison. Indeed, "[s]peculation and suspicion must not infect the sentencing process; simply put, the finding of aggravating or mitigating factors must be based on evidence." Id. at 64. Still, our Supreme Court instructed in Case that

> [a]t [a] new sentencing hearing, [a] court should give full consideration to all relevant evidence and all relevant sentencing factors as of the day defendant stands before the court. State v. Randolph, 210 N.J. 330, 354 (2012). As such, the sentencing court may consider defendant's conduct and comportment while imprisoned, whether positive or negative. Defendant is entitled to bring to the court's attention any rehabilitative or other constructive measures he has taken in the intervening years. The State, likewise, is not limited in its presentation. The only restriction placed on both parties is that the evidence presented be competent and relevant.
>
> [Case, 220 N.J. at 70.]

A-3989-22

Here, in its resentencing submission, the State provided the following information to the judge:

> The [New Jersey Department of Corrections (NJDOC)] records[2] reflect that . . . defendant has continued to violate the law from inside New Jersey's highest security prison. He continues to not abide by the laws of our state. The records reflect two adjudications for violations of prison policies for which he received due process and administrative punishment—one of which would also constitute a felony ([t]hird[-d]egree [p]ossession of a [c]ell [p]hone in a [c]orrectional [i]nstitution, N.J.S.A. 2C:29-10). The records also confirm that NJDOC still classifies him as a member, and indeed active leader, of . . . the Bloods. This is entirely consistent with the evidence presented at the [Rule] 104 hearing and at trial. This includes a security investigation and protective actions taken around . . . [d]efendant having put out a bounty . . . to harm certain corrections officers with another [gang] leader.

In his resentencing submission, defendant countered that since his incarceration "he has had two minor infractions, the possession of a large amount of postal stamps and a cell phone." He maintained that "[d]espite other allegations, nothing else has been substantiated." Based on the parties' resentencing submissions, we are satisfied the judge's findings were not speculative but were supported by documented, credible evidence in the record. However, even without the judge's reference to defendant's institutional record,

---

[2] The NJDOC records are not part of the record on appeal.

the judge provided ample reasons for his sentencing decision based on defendant's extensive and violent prior criminal history.

Equally unavailing is defendant's contention that by applying aggravating factor five, the judge erred in considering what defendant describes as "the equivalent of . . . acquitted conduct" because the jury was hung on the promoting organized street crime offense. Aggravating factor five allows the judge to consider whether "[t]here is a substantial likelihood that the defendant is involved in organized criminal activity" in determining the appropriate sentence. N.J.S.A. 2C:44-1(a)(5).

In State v. Tillery, 238 N.J. 293 (2019), our Supreme Court provided the following guidance:

> If a jury is unable to return a verdict as to some offenses and convicts the defendant of others, and the State requests that the court consider evidence presented as to offenses on which the jury deadlocked, such information may constitute competent, credible evidence on which the court may rely in assessing the aggravating and mitigating factors. See Case, 220 N.J. at 63-65. No Sixth Amendment or other constitutional principle, or statutory provision, generally bars a court from considering such evidence. And consideration of competent evidence presented in support of charges— even if the jury does not go on to convict defendant on those charges—does not raise concerns about drawing inferences from the mere fact that charges had been brought, a practice we found improper in State v. K.S., 220 N.J. 190 (2015).

A-3989-22

[Tillery, 238 N.J. at 326.]

Here, based on the proofs adduced at trial and defendant's institutional record, we are satisfied that aggravating factor five is amply supported by the record and the judge did not err in considering the gang activity evidence. The State's theory at trial was that Jones and Maloney were high-ranking members of the Bloods who either gave Jackson permission to shoot Porter or directed him to shoot Porter, who was a member of a rival gang. Jones, slip op. at 15-16. In support, the State presented a "gang expert" at trial as well as a member of the NJDOC Gang Unit to whom Jones had admitted being "a member of the Bloods gang." Id. at 18-19. The presentence report also indicated that "[a]lthough he denied any involvement, . . . defendant has been classified as a member of the Bloods by the Gang Intelligence Unit of the Essex County Jail." The Tillery Court "caution[ed] courts not to consider evidence pertaining to charges as to which a jury deadlocked in sentencing unless and until the defendant no longer faces the prospect of prosecution for those charges." 238 N.J. at 327. That is not a concern in defendant's case because count five was dismissed at defendant's original sentencing.

We also reject defendant's assertion that the judge prevented him from addressing the court during sentencing. To be sure, as part of a sentencing, "a

13

defendant has the right to allocute, that is to address the court directly, in connection with his or her sentence." State v. Blackmon, 202 N.J. 283, 297-98 (2010). To that end, under Rule 3:21-4(b), "[b]efore imposing sentence the court shall address the defendant personally and ask the defendant if he or she wishes to make a statement in his or her own behalf and to present any information in mitigation of punishment. The defendant may answer personally or by his or her attorney."

When a sentencing court fails to offer the defendant the opportunity to allocute, "the error is structural and the matter must be remanded for resentencing without regard to whether there has been a showing of prejudice." State v. Jones, 232 N.J. 308, 319 (2018) (citing State v. Cerce, 46 N.J. 387, 396-97 (1966)); see State v. Laird, 85 N.J. Super. 170, 178-79 (App. Div. 1964) ("Strict adherence to [Rule 3:7-10(c)],[3] which is legally essential, can be assured if trial judges unambiguously address themselves to the defendant, leaving 'no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.'" (quoting Green v. United States, 365 U.S. 301, 305 (1961))).

---

[3] Rule 3:7-10(c) is the old version of Rule 3:21-4(b).

Here, before the judge imposed sentence, he invited defendant to address the court. Defendant responded as follows:

> [DEFENDANT]: Yes. With the change—the prosecutor was using, like, as being fact (indiscernible), like allegations on things like gang affiliation and organization, he's still using that. I wasn't ever found guilty of none of that. I (indiscernible) in a gang or anything. I was never found guilty of none of that, but she keep using it. They sent charges on the side that institution with my own UPSI, I never was charged with none of that shit. He said several things I was never charged with. One of them, the assault, riling it up, gang with assault, I was never charged with none of that.
>
> THE COURT: All right.
>
> [DEFENDANT]: I understand, but I'm saying, used them from aggravating factors.
>
> THE COURT: Yes. Thank you.

Clearly, the judge complied with the strictures of Rule 3:21-4(b). While announcing the sentence, the judge rebuffed defendant's attempt to interrupt the sentencing. Relying on that exchange, defendant now claims he "was totally silenced by the [c]ourt when trying to address the [c]ourt regarding the discussion that it was undertaking relative to his institutional and behavioral record." However, defendant's argument fails. Defendant had an opportunity to address the court as required by Rule 3:21-4(b). A judge may stop disruptive

15

interruptions during court proceedings, as occurred here, to "maintain proper decorum." <u>State v. Tedesco</u>, 214 N.J. 177, 198 (2013). Under the circumstances, we discern no basis to disturb the sentence imposed.

To the extent we have not addressed any specific arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division