**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0736-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AMADO SANCHEZ,

    Defendant-Appellant.

_____

        Submitted April 17, 2018 — Decided July 11, 2018

        Before Judges Reisner and Hoffman.

        On appeal from Superior Court of New Jersey,
        Law Division, Mercer County, Indictment No.
        14-10-1240.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Molly O'Donnell Meng, Assistant
        Deputy Public Defender, of counsel and on the
        brief).

        Angelo J. Onofri, Mercer County Prosecutor,
        attorney for respondent (Mary E. Stevens,
        Assistant Prosecutor, of counsel and on the
        brief).

PER CURIAM

Defendant Amado Sanchez appeals from his conviction for second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). He also appeals from the sentence of seven years in prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

The charges arose from a June 15, 2014 incident, in which defendant allegedly cut the victim, Mr. Pajuada, on the arm with a large knife. Pajuada and his former girlfriend Ms. Rodriguez[1] testified about the incident, as did defendant. On this appeal, defendant raises the following points of argument:

> I. THE TRIAL COURT IMPROPERLY PRECLUDED DEFENDANT FROM ELICITING TESTIMONY ABOUT THE COMPLAINING WITNESS'S DISMISSED CHARGES AND INADEQUATELY CHARGED THE JURY AS TO THE PENDING CHARGES OF THE STATE'S OTHER EYEWITNESS, DEPRIVING DEFENDANT OF HIS RIGHTS TO CONFRONTATION, DUE PROCESS, AND A FAIR TRIAL.
>
> A. The Trial Court Improperly Precluded Defendant From Eliciting Testimony About Complaining Witness Pajuada's Aggravated Assault Charges For Stabbing A Man, Which Were Dismissed Eight Weeks Before Defendant's Trial.

_____

[1] The witnesses' first names are irrelevant to our opinion, and we omit them to protect their privacy.

B. The Trial Judge's Inadequate Instruction Regarding Charges Pending Against Rodriguez, The Only Other Eyewitness, Unfairly Neutralized The Effect Of That Testimony. (Not raised below)

II. THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON SELF-DEFENSE, WHICH WAS CLEARLY INDICATED BY TESTIMONY THAT THE COMPLAINING WITNESS ACTED AS THE AGGRESSOR AND BEAT DEFENDANT WITH A RAKE PRIOR TO THE INTRODUCTION OF A KNIFE INTO THE FIGHT.

III. THE MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE THE TRIAL COURT FAILED TO GIVE ANY REASONS SUPPORTED BY THE RECORD FOR THE TWO AGGRAVATING FACTORS IT FOUND AND FAILED TO TAKE INTO ACCOUNT RELEVANT MITIGATING FACTORS THAT WERE SUPPORTED BY THE RECORD.

After reviewing the record, we find no merit in any of those contentions. We affirm the conviction and the sentence.

I

We summarize the most pertinent trial evidence, in light of the issues raised. There was no dispute that someone cut Pajuada on the arm. The wound severed an artery and required several surgeries to repair. The issue was whether defendant, or someone else, stabbed Pajuada.

According to Pajuada, at the time of the incident, he had known defendant for several years, and the two of them did not get along. In the early morning hours of June 15, 2014, Pajuada got into a fight with defendant's cousin Luis. Pajuada testified that

Luis had a broken bottle, and Pajuada punched him. However, Pajuada was not injured in that fight. After the fight with Luis, several other people confronted Pajuada, and during that confrontation, defendant pulled out a large knife and tried to stab Pajuada in the torso. Pajuada testified that defendant "was stabbing me in the body, but I moved and so he got me in the arm." After being injured, Pajuada chased defendant for a short distance, before collapsing due to loss of blood. Pajuada testified that on the night of the fight, he was unarmed.

Pajuada gave a statement to the police the day after the assault, and another statement a month later. In both statements, he identified defendant as the one who cut him. In a statement to the police the day after the assault, Rodriguez also named defendant as the assailant, and she showed the police a Facebook photo of defendant on her cell phone.

Rodriguez testified that at the time of the incident, she had known defendant for several years, and the two of them were friends. She had been Pajuada's girlfriend, had a child with him, and still had a friendly relationship with him. On the night of June 15, 2014, she went to an "after hours" drinking house[2] on Ferry Street. Pajuada was already there. Defendant and Luis,

_____

[2]  The house was also referred to as a "speakeasy."

whom Rodriguez described as a "young boy," arrived a few minutes later. Someone told Rodriguez that Luis had a knife, and she took it away from him and hid it.

According to Rodriguez, defendant got into an argument with Pajuada, and the two men and Luis went outside the house. Once outside, Luis and Pajuada got into a physical confrontation. Luis had a broken bottle in his hand, but Rodriguez grabbed it from him. Pajuada pushed Luis down, and defendant yelled at Pajuada to leave his cousin alone. Rodriguez admitted that Pajuada then challenged defendant to "fight like a man."

Shortly thereafter, defendant pulled out a large knife and started brandishing it at Pajuada. Rodriguez tried to intervene but Pajuada pushed her out of the way. According to Rodriguez, Pajuada was unarmed at first, but grabbed a rake after defendant pulled out the knife. She testified that defendant had a clear path to leave the scene and could have walked away from the fight, as she was begging him to do, but he did not. After defendant "stabbed" Pajuada, defendant ran away, and Pajuada ran after him until he collapsed, bleeding. Rodriguez ran after Pajuada, and tried to stop the bleeding with a tourniquet. When the police arrived, Rodriguez told them defendant stabbed Pajuada. She repeated that statement later at the police station.

A-0736-16T4

In his trial testimony, defendant implicitly blamed his cousin Luis for injuring Pajuada. Defendant stated that he was at the Ferry Street house with Luis at around 3:40 a.m. on June 15, 2014. Pajuada was there, too, and got into an argument with Luis. Pajuada and Luis went outside, but defendant remained in the house "talking to a friend." A few minutes later, defendant and the friend went out the kitchen door to smoke a cigarette.

Defendant testified that, after stepping outside, he saw that Pajuada and Luis were having a fight. Luis had a bottle in his hand and Pajuada had "a jack knife." They were both bleeding. According to defendant, Pajuada pushed Luis to the ground. Defendant walked over and lifted Luis up and told him to run, because Pajuada had a knife. Luis started running away, with Pajuada chasing him. Defendant walked away from the scene. Defendant denied having a weapon, and said he did not know how Pajuada "got injured."

## II

Defendant contends that the trial court erred in precluding the defense from cross-examining Pajuada about a 2011 assault charge, which the State dismissed about eight weeks before defendant's 2016 trial began. At an in limine hearing prior to the trial, the prosecutor represented to the court that the State dismissed the charge because her office could not "get in contact

A-0736-16T4

with the victim." The defense did not question that representation. The defense also conceded that the prosecutor's office had told Pajuada that the assault charge against him had no connection to the charges against defendant. In other words, the State did not offer Pajuada a deal to dismiss the charge against him in return for his truthful testimony against defendant.

The trial judge concluded that, under the circumstances, the fact that Pajuada previously faced an assault charge, which had been dismissed, admittedly with no deal, was not probative as to his credibility as a witness in this case. The judge further reasoned that, as a crime victim, Pajuada had the right to testify, without being questioned about irrelevant, dismissed charges.

As the Supreme Court recently reaffirmed in State v. Bass, 224 N.J. 285 (2016), ordinarily, a witness's pending or resolved criminal charges are appropriate subjects for cross-examination, to show possible bias. Id. at 304-05.

> [T]he case law envisions that a trial court will undertake a careful evaluation of a defendant's claim that a witness is biased. The nature of the witness's alleged offense, and the sentencing exposure that he or she confronts by virtue of that offense, is a significant factor. If a witness faces a pending investigation or unresolved charges when he or she gives a statement to law enforcement, cooperates with the prosecution in preparation for trial, or testifies on the State's behalf, that investigation or charge is an appropriate subject for cross-

examination. The trial court should also review the terms of the witness's plea agreement.

[Id. at 305.]

In the circumstances of this case, we agree with the trial judge that the prior, dismissed charge was not probative as to Pajuada's credibility. Pajuada had told essentially the same story since the night of the assault, when he was interviewed in the hospital. There is no evidence that he changed his story to incriminate defendant, after the State dropped the charges. Further, the defense did not question the prosecutor's explanation that the State dropped the charges because the victim could not be found, and there was no plea deal. Under those circumstances, Pajuada was not beholden to the State at the time of defendant's trial, and the State had nothing to hold over him, as it would if Pajuada were on probation or had promised to give testimony in exchange for dismissal of the charges.

Lastly, on this record, if there was error in precluding defendant from eliciting evidence of the dismissed charge, the error was harmless. See R. 2:10-2; Bass, 224 N.J. at 307-08.

For the first time on appeal, defendant also contends that the judge gave an inadequate jury instruction, after allowing the defense attorney to cross-examine Rodriguez about pending charges against her. The charges were filed in 2016, and there was no

evidence that the State had offered Rodriguez a plea deal or otherwise suggested to her that she might get favorable treatment if she testified against defendant. Nonetheless, the trial judge properly allowed defense counsel to elicit from Rodriguez the fact that she had been charged with assault by auto and two weapons offenses, for which she could be sentenced to prison if convicted.

After Rodriguez gave that testimony, the judge gave the jury a limiting instruction, telling them that they could only consider the testimony as it bore on Rodriguez's credibility. He told them they might consider whether someone who did not follow society's rules might also be likely not to give truthful testimony, and cautioned them that a person charged with a crime is nonetheless entitled to a presumption of innocence. At the next break, the judge specifically asked both attorneys if they had any objections to the limiting instruction he had just given. Defense counsel responded, "I have nothing, Your Honor."

In summation, defense counsel made the point that Rodriguez was "currently being prosecuted by this prosecutor's office in a different case" and "testified in favor of the State in order to save herself." She argued that the jury could determine that Rodriguez hoped that testifying "would help her receive favorable treatment from the State in how they handle those charges." In response, the prosecutor argued that Rodriguez had been telling

the same consistent story "since the early hours of June 15, [2014]."

In his final charge to the jury, the judge thoroughly instructed the jury about how to consider the pending charges as possible evidence of bias. He explained to the jury that they could consider the pending charges against Rodriguez

> only to the extent that you determine that it has biased [her] in favor of the State, that is to say if you believe that [] Rodriguez testified as she did because of the charges, and because she hoped that her testifying would help her to receive favorable treatment from the State in how they handled those charges.

The judge also, correctly, told the jury not to consider the "mere fact" of the pending charges as meaning that Rodriguez was guilty of the charges, or that she was "less likely to comply with our society's rules and, therefore, more likely to ignore the oath requiring truthfulness." Rather the issue was whether the pending charges influenced her to testify favorably to the State. There were no objections to the charge.

Although the instructions the judge gave immediately after Rodriguez testified were not on point, the judge corrected the error in the final jury instructions. We find that the final charge adequately conveyed to the jury the concepts discussed in

Bass, and in the Model Charge on Testimony of a Cooperating Witness. We find no plain error. R. 2:10-2.

### III

Defendant next argues that the judge should have charged the jury as to self-defense. The argument is without sufficient merit to warrant discussion beyond these brief comments. R. 2:11-3(e)(2).

Beginning with defense counsel's opening statement, and continuing throughout the trial, the defense theory was that defendant had nothing do to with the stabbing of Pajuada. At the end of the testimony, the judge noted that a self-defense charge would be inconsistent with the defense theory, but he gave defense counsel until the next trial day to tell him whether she wanted a self-defense charge. Defense counsel did not request a self-defense charge, and giving due regard to the defense theory of the case, the judge did not give the charge. Defense counsel did not object to any aspect of the judge's final instructions. We find no error, much less plain error, in the judge's course of action. R. 2:10-2. In the context of this case, giving a self-defense charge would have undermined the defense. See State v. Perry, 124 N.J. 128, 162-64 (1991); State v. Vasquez, 265 N.J. Super. 528, 550 (App. Div. 1993).

11

Finally, we address defendant's sentencing arguments. The judge found aggravating factors three and nine but did not give them any particular weight. See N.J.S.A. 2C:44-1(a)(3); N.J.S.A. 2C:44-1(a)(9). The judge also considered the particular seriousness of the victim's injury, which required five surgeries. The judge found mitigating factor seven, defendant's lack of any prior criminal convictions. N.J.S.A. 2C:44-1(b)(7). The judge considered all of the other mitigating factors defendant proposed and explained why he found they did not apply. After considering the factors he found, the judge imposed a seven-year term, which was in the mid-range for a second-degree crime. See N.J.S.A. 2C:43-6(a)(2). We find no abuse of discretion in the sentence. See State v. Case, 220 N.J. 49, 64-65 (2014); State v. Bolvito, 217 N.J. 221, 228 (2014). No further discussion of this point is warranted. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0736-16T4