**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3936-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL J. MANIS,

    Defendant-Appellant.

_____

Argued September 30, 2025 – Decided November 7, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Accusation No. 24-03-0081.

Andrew Gimigliano argued the cause for appellant (Mandelbaum Barrett, PC, attorneys; Anthony J. Iacullo, of counsel; Andrew Gimigliano, of counsel and on the briefs; Austin W.B. Hilton, on the briefs).

Deepa S. Jacobs, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Deepa S. Jacobs, of counsel and on the brief).

PER CURIAM

Defendant Michael J. Manis appeals his sentence for aggravated manslaughter, contending the trial court erred in applying the sentencing factors. After carefully reviewing the record in light of the parties' arguments and governing legal principles, we affirm the sentence.

I

On August 12, 2023, at approximately 5:01 pm, defendant called 911 to report that his wife, Judith, was dead and "possibly beaten" because of a robbery at their home. At 8:15 pm, detectives from the Bergen County Prosecutor's Office arrived at defendant's residence and obtained his consent to search the house. Defendant voluntarily accompanied the detectives to the Hasbrouck Heights Police Department, where he waived his Miranda[1] rights and confessed to killing Judith by suffocating her with a pillow.

Defendant recounted that during the suffocation, he initially removed the pillow from Judith's face, at which point she threatened to call the police. He then decided to "finish this off" and "again began suffocating her, [causing] her . . . death." He stated suffocating Judith "took longer than . . . anticipated" and that it was not like "they show in the movies." Afterwards, defendant considered ways to dispose of her body to conceal his crime. He purchased a hand truck

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

and straps from Home Depot to transport her body but later decided against it. Ultimately, he decided to remove her "nightgown," "dress her," and "stage[] the room to make it appear as if a home invasion had occurred."

On March 1, 2024, defendant waived indictment and pled guilty to an accusation of first-degree aggravated manslaughter extreme indifference to human life, N.J.S.A. 2C:11-4A(1). At sentencing, four months later, the court applied aggravating factors three ("risk that the defendant will commit another offense") and nine ("need for deterring the defendant and others from violating the law"). N.J.S.A. 2C:44-1(a)(3) and -1(a)(9). In addition, the court applied mitigating factors seven ("the defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"), eight ("defendant's conduct was the result of circumstances unlikely to recur"), and nine ("character and attitude of the defendant indicate that the defendant is unlikely to commit another offense"). N.J.S.A. 2C:44-1(b)(7); -1(b)(8); and -1(b)(9). The court declined to apply aggravating factor one ("nature and circumstances of the offense, and the role of the actor in committing the offense, including whether or not it was committed in an especially heinous, cruel, or depraved manner"), N.J.S.A. 2C:44-1(a)(1), and mitigating factors three ("defendant acted under a strong

3

provocation"), four ("substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"), ten ("defendant is particularly likely to respond affirmatively to probationary treatment"), and eleven ("imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents").  N.J.S.A. 2C:44-1(b)(3): -1(b)(4); -1(b)(10); and -1(b)(11).  After weighing the applied sentencing factors, the court determined that the aggravating factors significantly outweighed the mitigating factors, and, consistent with the plea agreement, imposed a twenty-year sentence subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

On appeal, defendant raises the following contentions:

POINT 1

THE TRIAL COURT FAILED TO ARTICULATE AN ADEQUATE BASIS FOR ITS FINDINGS OF THE AGGRAVATING AND MITIGATING FACTORS IN THIS CASE.

SUBPOINT A

The trial court erred in applying aggravating factor 3.

SUBPOINT B

The trial court erred in finding aggravating factor 3 while simultaneously finding mitigating factors 8 and 9.

4

SUBPOINT C

The trial court erred in finding a need for specific deterrence under aggravating factor 9 while also finding mitigating factor 8.

POINT 2

THE TRIAL COURT'S ERRORS REQUIRE RESENTENCING.

II

Appellate courts review sentencing determinations under an abuse of discretion standard. State v. Bolvito, 217 N.J. 221, 228 (2014). We must affirm a sentence under review unless "(1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) '. . . [applying] the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). "A sentence imposed pursuant to a plea agreement is presumed to be reasonable" because the defendant waived his right to a trial in exchange for a reduction or elimination of specific charges. Id. at 70-71.

5

The aggravating and mitigating factors that a trial court must consider in imposing a sentence are set forth in N.J.S.A. 2C:44-1(a) and (b). As our Supreme Court has stressed, trial courts must "explain and make a thorough record of their findings to ensure fairness and facilitate review." State v. Comer, 249 N.J. 359, 404 (2022). "Proper sentencing thus requires an explicit and full statement of aggravating and mitigating factors and how they are weighed and balanced." State v. McFarlane, 224 N.J. 458, 466 (2016) (quoting State v. Randolph, 210 N.J. 330, 348 (2012)). See also State v. Case, 220 N.J. 49, 66 (2014) (citing Fuentes, 217 N.J. at 73) ("[C]ritical to the sentencing process and appellate review is the need for the sentencing court to explain clearly why an aggravating or mitigating factor presented by the parties was found or rejected and how the factors were balanced to arrive at the sentence."). When the trial court fails to provide a qualitative analysis of the relevant sentencing factors on the record, an appellate court may remand for resentencing. State v. Kruse, 105 N.J. 354, 363 (1987).

Applying this standard, we are not persuaded that the trial court erred in sentencing defendant. The record supports the court's application of aggravating factor three. The court found that defendant's "self-serving letter" did not excuse his conduct and the "totality of circumstances" made it likely that he would re-

6

offend. In his letter, defendant wrote he wanted to divorce Judith because she verbally abused him and was unfaithful. He claimed he decided against it because of his strong relationship with her family. According to defendant, on the day he killed Judith, an argument led him to "snap[] and completely los[e] [his] mind," resulting in the suffocation. He continued to suffocate her after she stated that she would call the police and that he was "going to jail," thereby causing her death. Further, he flippantly told the police that suffocating her was "not like in the movies," and his request for a suspended sentence indicated minimal remorse and accountability for his actions. Notably, even defendant's attorney candidly admitted at sentencing that the record may support a finding for factor three.

In considering aggravating factor nine, the court reasoned that there was a "very strong need to deter, not only folks like [defendant], but others from committing these types of crimes and offenses." The finding is supported by the record. Defendant was convicted of a serious offense, aggravated manslaughter, and he deliberately removed the pillow from his wife's face and then decided to "finish this off" by continuing to suffocate her. Further, defendant's attempts to cover up the killing—by dressing his wife in different clothes and staging the room to look like a "home invasion"—demonstrates his attempt to deflect blame

A-3936-23

and avoid punishment for the homicide. This evidence, coupled with his minimal remorse, supports the need for deterrence of this egregious conduct.

We conclude there is no merit to defendant's contention that the trial court failed to reconcile its contradictory findings for aggravating factors three and nine with mitigating factors seven, eight, and nine. Although the court's explanation of its balancing was not explicit, its findings are supported by the record. The court maintained that defendant's request for a suspended sentence, his letter, and his statements to the police demonstrated a lack of meaningful remorse. The court stated:

> Again, as the [p]rosecutor noted, he has never heard, nor have I heard throughout my tenure as a [c]riminal [j]udge here, anyone asked for a suspended sentence. Someone who ultimately took the life of another person . . . using his own hands. Again, the [c]ourt is perplexed beyond belief that a request in that nature would be made. Counsel did note that . . . was not a discussion he had . . . with [defendant]. Notwithstanding, again, it is beyond my belief.
>
> [Defendant], I've heard, and you've provided comments about you. Everything, the theme here in your letter to me, the seven-page letter and the statements you made here today were all about you. I mean, I believe that you are somewhat remorseful for what happened, but the theme here was how it affected you. You were scared. You were under stress. You were, again, running around like a chicken with your head cut off.
>
> . . . .

> Again, sir, . . . you've expressed remorse to me, but, again, I'm hard-pressed to think deep down that there's truly remorse for what happened based upon what you've said here today. And you asked me for a suspended sentence and community service?
>
> . . . .
>
> Again, in reading the report, you said to law enforcement that "it's not like in the movies." I mean, sir, come on. I mean, . . . that is unfathomable that that would be a comment made to law enforcement who was investigating the death of a person at your hands. Again, I'm very troubled.

The court also observed that defendant had alternatives to committing the offense:

> You filed for divorce. There was reference that you filed divorce papers, that you did yourself two times. You were married since 1975 to Judith. That's a long time. Most of us in this courtroom, some of us — I was born, but some of the folks in the courtroom weren't even born at that time. You were married longer than most people were born.
>
> Sir, again, I hear a common theme in all these papers about you. There — again, if you had challenges in your relationship, there are other options other than taking someone's life. There are other options that you could pursue.

In sum, the record contradicts defendant's assertions. The record supports the court's conclusion that defendant posed a risk of recidivism under aggravating factor three and required deterrence under aggravating factor nine—

9

even with his lack of criminal history under mitigating factor seven—given that he attempted to cover up the offense, failed to take full responsibility for his actions, and committed this offense with various more appropriate alternatives available, such as divorce and his support system.

Similarly, the court's application of the aggravating factors was not at odds with mitigating factors eight and nine. Although the exact circumstances of his offense were unlikely to recur, his lack of remorse and deliberate actions did not address the court's legitimate concern about his potential risk of recidivism and the need for specific deterrence. Moreover, as our Supreme Court observed in Fuentes: "In exceptional cases, even if the record demonstrates that the offense . . . arose in circumstances unlikely to recur, thus supporting a finding as to mitigating factor eight, a defendant could nonetheless pose a risk of recidivism, requiring specific deterrence." 217 N.J. at 80.

Accordingly, the trial court's determination that the "aggravating factors substantially outweigh[ed] the mitigating factors" should not be disturbed. The court applied significant weight to aggravating factors three and nine and minimal weight to mitigating factors seven, eight, and nine. Given the relative weights applied to each sentencing factor and the court's concern about risk re-

offense and the need for deterrence, the court properly determined that the aggravating factors outweighed the mitigating factors.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

11