**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0201-17
A-0518-17

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ANDREA K. DUNBRACK,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

GABRIEL RODRIGUEZ,

      Defendant-Appellant.

_____

Argued April 10, 2019 – Decided May 1, 2019
Remanded by the Supreme Court March 22, 2021
Reargued June 8, 2021 – Decided June 25, 2021

Before Judges Yannotti and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 15-01-0058.

Robin Kay Lord argued the cause for appellant Andrea Dunbrack.

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant Gabriel Rodriguez (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, of counsel and on the brief).

Narline Casimir, Assistant Prosecutor, argued the cause for respondent in A-0201-17 (Angelo J. Onofri, Mercer County Prosecutor, attorney; Randolph E. Mershon, III, Assistant Prosecutor, of counsel and on the brief).

Narline Casimir, Assistant Prosecutor, argued the cause for respondent in A-0518-17 (Angelo J. Onofri, Mercer County Prosecutor, attorney; Narline Casimir, of counsel and on the brief).

PER CURIAM

In a prior decision, we addressed the back-to-back appeals of defendants Gabriel Rodriguez and Andrea Dunbrack challenging their convictions for: first-degree robbery, N.J.S.A. 2C:15-1(a)(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purposes, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (Dunbrack only); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (Rodriguez only). State v. Dunbrack, Nos. A-0201-17, A-0518-17 (App. Div. May 1, 2019) (slip op. at 1-

4). We reversed defendants' convictions and remanded for new trials because we concluded the trial judge should have sua sponte charged the jury with the lesser-included offense of theft as an alternative to the robbery offenses. Id. at 4. In light of our decision requiring a new trial, we declined to reach the other arguments raised by defendants on the appeals. Id. at 3.

The Supreme Court reversed and reinstated defendants' convictions, concluding the trial court did not err in failing to issue the lesser-included charge and remanded the remaining issues defendants raised on the initial appeals for us to resolve. State v. Dunbrack, 245 N.J. 531, 552 (2021). The remaining arguments raised by Dunbrack are as follows:

> POINT ONE — THE TRIAL COURT ERRED IN RULING THAT DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE WAS TIME BARRED BECAUSE A MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE MAY BE MADE AT ANY TIME.
>
> POINT TWO — THE TRIAL COURT'S DECISION DENYING DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE MUST BE REVERSED BECAUSE THE CO-DEFENDANT'S LETTER EXONERATING DEFENDANT IS MATERIAL, NEWLY DISCOVERED, AND WOULD PROBABLY CHANGE THE JURY'S VERDICT.

A-0201-17

POINT THREE — A QUALITATIVE WEIGHING OF THE AGGRAVATING AND MITIGATING FACTORS DOES NOT SUPPORT THE IMPOSITION OF AN AGGREGATE SENTENCE OF [THIRTEEN] YEARS WITH AN [EIGHTY-FIVE PERCENT] PERIOD OF PAROLE INELIGIBILITY.

Rodriguez's remaining argument is as follows:

POINT II — A RESENTENCING SHOULD OCCUR BECAUSE THE COURT DID NOT EXPLAIN WHY IT FOUND AGGRAVATING FACTORS THREE, SIX, AND NINE, AND THE APPARENT REASON WAS A SERIES OF PRIOR ARRESTS FOR WHICH NO DISPOSITION WAS KNOWN. U.S. CONST. AMEND. XIV; N.J. CONST. ART. I, PARA. 1.

The Supreme Court summarized the underlying facts as follows:

On June 16, 2014, Hamilton Police Officer Robert Whartenby was on patrol in the area of South Olden and Toronita Avenues with his partner, Officer David Walls. At approximately 1:45 a.m., the officers turned onto Toronita Avenue and noticed a vehicle in the parking lot of an abandoned building. The vehicle's headlights were on and the driver's door was open. Officer Whartenby pulled into the parking lot next to the vehicle and noticed there were no occupants inside, but there was a male standing on the passenger's side of the vehicle and a female standing near the rear.

The officers exited their vehicle to investigate further. Upon exiting, the officers asked the man and the woman, later identified as defendants Rodriguez and Dunbrack, to stop. At that time, Officer Walls walked to the rear of the vehicle and observed a small fire the size of a coffee can on the ground. Near the fire was a naked male lying on the ground in the fetal

4

position. According to the officers, the man was breathing heavily, his face and head were covered in blood, and he was not verbally responsive. Upon observing the male on the ground, the officers attempted to secure Rodriguez, but he ran. The officers placed Dunbrack, whose feet had blood on them, in handcuffs and secured her in the back of the patrol car. After securing Dunbrack, the officers turned their attention to putting out the small fire and obtaining medical assistance for the victim, N.R. N.R. was taken to a nearby hospital where he received sutures above his left eye and staples on his head.

Inside the vehicle, Officer Whartenby observed a purse and a blood-stained handgun on the driver's seat. Officers found the victim's underwear and socks on the ground near the rear passenger-side tire, and his t-shirt was near the edge of the woods where the vehicle was parked. Foliage near the victim appeared to contain blood. The victim's pants, passport, and his wallet, which contained money, were on the front passenger seat. A subsequent search of the car revealed business cards in the trunk, including one with the name "Carlos," the words "Cheap Cab/Taxi Baroda," and a phone number. The same phone number appeared on another business card found in the trunk bearing Gabriel Rodriguez's name.

After officers transported Dunbrack to the police station, a female officer [Eirnvn Papafilipakis] conducted a full pat down that revealed a handgun hidden in Dunbrack's bra.[1] Officers subsequently arrested Rodriguez at a nearby diner. In his possession

---

[1] Detective James Orzechowski of the New Jersey State Police, Ballistics Unit, testified he examined and test-fired both firearms in this case. He determined the semi-automatic handgun found in Dunbrack's bra was operable, but the revolver found in the front driver's seat was inoperable due to internal corrosion.

5

were four cellphones, including one belonging to the victim.

Subsequent testing of the blood on the firearm and Dunbrack's feet confirmed that the blood matched the victim's DNA profile.

[Id. at 535-36.]

The Court recounted the victim's testimony as follows:

At trial, N.R. testified that around 7:30 p.m. the evening before, he went to a bar in Trenton, ate dinner, drank approximately seven beers, and then left to go to another Trenton bar, Antigua. N.R. arrived at Antigua around 10:00 p.m. and, while there, drank approximately three more beers. At some point around midnight or 1:00 a.m., a man, later identified as defendant Rodriguez, approached N.R. and asked him if he wanted a cheap taxi ride home. Although N.R. was not sure he could trust someone offering a cheap taxi ride, he decided to take Rodriguez up on his offer. Rodriguez told N.R. to wait outside and that the cheap taxi would be a gray vehicle. N.R. did as Rodriguez instructed and waited for the car outside the bar.

When the gray car pulled up, Dunbrack was driving and Rodriguez was seated in the front passenger seat. N.R. entered the vehicle and sat behind Rodriguez in the rear passenger seat. N.R. advised them of his address, but he soon realized that Dunbrack was not driving towards his home. When N.R. protested, Dunbrack stopped the car. Rodriguez then exited, opened the rear passenger door, pointed a gun at N.R., and told N.R. to hand over his money or N.R. would be killed. N.R. testified that as he began giving Rodriguez his wallet and cell phone, Rodriguez hit N.R[.] in the face with the gun. After being hit, N.R. blacked out and

6

the next thing he remembered was waking up in the hospital. At some point prior to blacking out, N.R. recalled being told to take off his clothes, but he did not have the best recollection regarding whether he took his clothes off or defendants did so. N.R. testified that he thought he was going to die when Rodriguez pointed the gun at him.

[Id. at 536-37.]

Rodriguez did not testify at trial. However, the Court recounted Dunbrack's testimony. Id. at 537-39. She admitted having a relationship with Rodriguez, but claimed she had traveled to New Jersey from Massachusetts as part of her job as an exotic dancer. Id. at 537-38. Her version of the events leading to her arrest was as follows:

> Dunbrack testified that on June 15, 2014, Rodriguez drove her to Atlantic City to meet with an individual she had met at a club two nights prior. According to Dunbrack, the gentleman was on a business trip and he wanted company while he gambled. Dunbrack met him in Atlantic City and went to several establishments with him. The man paid Dunbrack for her time, but there was no sexual activity involved. When Dunbrack was ready to leave Atlantic City at approximately 9:00 p.m., she called Rodriguez and he picked her up. Dunbrack stated that she wanted to go home, meaning back to the motel where they were staying, but Rodriguez wanted to go out. The pair eventually arrived at a bar in Trenton.

> Rodriguez went into the bar, but Dunbrack, upset that Rodriguez did not drive her back to the motel, stayed in the car. At one point, Dunbrack decided to

7

leave Rodriguez at the bar and drove off, but she returned soon thereafter because she felt bad about leaving. After she returned to the bar, Rodriguez emerged with . . . N.R. Dunbrack said she had never seen N.R. before and figured Rodriguez and N.R. were going to head to more bars. Upset because she still wanted to go home and because Rodriguez told her to get out of the driver's seat, Dunbrack got into the back seat of the car behind the driver's seat. N.R. was seated in the rear passenger seat.

Dunbrack testified that Rodriguez drove off and N.R. tried to talk to her, but she could not understand what he was saying because he was speaking Spanish. Dunbrack claimed that N.R. then touched her leg but she removed his hand and told him "no." Dunbrack testified that thereafter, N.R. started unbuttoning and pulling off his pants and tried to get on top of her. Dunbrack stated that she tried to push N.R. off of her and asked Rodriguez, who was still driving, for help. In response, Rodriguez reached over and hit N.R. in the head with something. N.R. began bleeding as a result of the blow to the head by Rodriguez.[2] Dunbrack sprayed N.R. in the face with mace and then pushed and kicked him off of her.[3]

After Rodriguez hit N.R., he pulled the car over, got out of the car, and attempted to drag N.R. out of the vehicle as the two men began fighting. Dunbrack testified that as soon as Rodriguez and N.R. began fighting, she threw her purse on the front passenger seat, got out of the car, and walked around to the other

---

[2] Detective Matthew Bagley was responsible for conducting DNA testing of the evidence in the case and testified there was no blood or blood stains inside the vehicle.

[3] Whartenby testified he did not smell mace in the car or on the victim.

A-0201-17

side of the car where the men were fighting. Dunbrack stated that N.R. was completely naked at that point, but she did not know where his clothes were or how he got undressed in such a short timeframe. Dunbrack also could not explain how N.R.'s pants, passport, wallet, and cash all ended up in the front passenger seat of her car. Dunbrack further testified that she did not know how the small fire was started. According to Dunbrack, at one point when N.R. was lying on the ground, Rodriguez retrieved some items from the back seat of the car, including a gun. Rodriguez handed Dunbrack the gun and she hid it in her bra. When the police arrived, Rodriguez ran and the officers placed Dunbrack under arrest.

[Id. at 538-39.]

We now turn to the facts underlying defendants' remaining claims. Following defendants' convictions, Dunbrack filed a motion for a judgment of acquittal, pursuant to Rule 3:18-2, and a motion for a new trial, pursuant to Rule 3:20-1. She attached a handwritten letter written by Rodriguez purporting to exonerate her. In his letter, Rodriguez wrote "it is unjust that [Dunbrack] is being punished for the alleged crimes that she was charged with and convicted [of]." He stated he was "the only one who deserve[d] to be punished" and "the evidence in the case [did not] point towards [Dunbrack]" because "[t]he victim himself testified that [Dunbrack] never did anything."

The trial judge denied both motions and after addressing the applicable legal standards found as follows:

9

In this case, the defendant's requesting a new trial in light of a letter written by her co-defendant, . . . Rodriguez, after the trial had ended. . . .

The [c]ourt finds that this piece of evidence is not material and is merely cumulative of . . . Dunbrack's testimony during which she states she had nothing to do with the attack on [the victim]. She was rather in the wrong place at the wrong time. Additionally, pursuant to the standards set forth in [State v. Carter, 85 N.J. 300, 314 (1981)], the co-defendant's letter is only slightly contradictory of the evidence that was offered by the State during trial and thus cannot be deemed material.

Under the second element, the letter from . . . Rodriguez was discoverable before or during trial with reasonable diligence. . . . Rodriguez exercised his right not to testify at trial. However, he could have written this letter addressing . . . Dunbrack's innocence without making any harmful admissions for himself.

Finally, this letter also is unlikely to change the jury's verdict if a new trial was granted. . . . Dunbrack testified during the trial that she was not involved in the crimes committed against [the victim], thus the degree of her involvement was addressed with and evaluated by the jury.

Therefore, the letter by . . . Rodriguez provided after the trial does not meet the standard for new evidence warranting a new trial.

Further, as it relates to the robbery charge, the elements of which are that the defendant was in the course of committing a theft and that while in the course of committing a theft knowingly inflicted bodily injury or used force upon another, this [c]ourt is satisfied that a reasonable jury could have found . . .

10

Dunbrack guilty based on the testimony of the victim alone . . . .

As it relates to the unlawful possession of the weapon charge, the elements of which that there was a weapon used, that the defendant knowingly possessed the weapon, and that the defendant did not have a permit to have such weapon. Again, this [c]ourt is satisfied that a reasonable jury could have found . . . Dunbrack guilty based upon the testimony not only of [N.R.] but also Detective Orzechowski, Officer Papafilipakis . . . Officer Fiasco[4], Officer Whartenby and Officer Bagley.

Now as it relates to the possession of a weapon for unlawful purpose, the elements of which are that a weapon was used, that the defendant possessed the weapon, that the defendant possessed the weapon with a purpose to use it against the person or property of the victim, and was the purpose to use the firearm unlawful? Again, this [c]ourt is satisfied that a reasonable jury could have found . . . Dunbrack guilty based on the testimony both of [N.R.] and Detective Orzechowski.

Finally, as it relates to the second unlawful possession of the weapon, the same issues arise[,] and the same testimony had been adduced. Accordingly, the [c]ourt is satisfied that a reasonable jury could have found her guilty based again on the testimony of Officer Papafilipakis and Detective Orzechowski.

Furthermore, this [c]ourt finds that having given due regard to the opportunity of the jury to pass upon

---

[4] Sergeant Ralph Fiasco testified he took photographs of these items while on scene, secured the revolver, and went to a hospital to document N.R.'s injuries, which he described for the jury.

A-0201-17

the credibility of the witnesses including but not limited to the victim, . . . Officers Whartenby and Papafilipakis[,] and . . . Dunbrack that it does not clearly and convincingly appear that there was a manifest denial of justice under the law.

The judge also found as follows:

While this motion only moves for a new trial under [Rule] 3:20-1, it's worth addressing [Rule] 3:20-2 as well. Pursuant to [Rule] 3:20-2, a motion for a new trial based on the ground of newly discovered evidence may be made at any time. However, under any other ground for a new trial, it must be made within [ten] days after the verdict or an extension must be fixed by the [c]ourt within that [ten] days after that verdict. Although this permits a party to make a motion for a new trial at any time, the motion is based on newly discovered evidence. As addressed previously, based upon the evidence proffered by . . . Dunbrack, it does not constitute newly discovered evidence. Again, that's the letter from [Rodriguez].

. . . .

. . . This motion was filed on March 12[], 2017, nearly three months after the date of the conviction. Therefore, this motion must fail under [Rule] 3:20-2 as well [be]cause the evidence is not newly discovered and under any other ground for a new trial the motion is untimely.

. . . Dunbrack initially motions for a[n] adjustment of acquittal notwithstanding the verdict pursuant to [Rule] 3:18-2. However, motions filed under that rule also must be made within [ten] days after the jury is discharged or within such further time as the [c]ourt fixes during the [ten] day period. The

12

jury entered the verdict in this case on December 15[], 2016. Thus, the time frame for this motion extinguished on December 27[], 2016, factoring in the [c]ourt-recognized holiday. This motion was not filed until March 12[], 2017, and no extension for this motion was addressed with the [c]ourt between December 15[] and December 27[] of 2016. Moreover, [Rule] 1:3-4(c) prohibits the parties and the [c]ourt from enlarging the time frame specified by [Rule] 3:18-2 and [Rule] 3:20-2. Thus, the [c]ourt has no discretion to allow this motion under these rules as well given its untimeliness. Accordingly, the defense motion for a judgment of acquittal and for a new trial on the conviction is denied.

As to Dunbrack's sentencing, the judge stated:

[T]he [c]ourt finds the following aggravating factors to be applicable: Number nine, the need for [deterring] the defendant and others from violating the law. The [c]ourt gives great weight to that aggravating factor.

As it relates to mitigating factors, the [c]ourt finds mitigating factor number seven to be applicable, that is, that the defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense[, N.J.S.A. 2C:44–1(b)(7)]. The [c]ourt also finds mitigating factor number nine to be applicable, that is, the character and attitude of the defendant indicate she's unlikely to commit another offense[, N.J.S.A. 2C:44–1(b)(9),] based upon the fact that this is her first conviction as well as the remorse that she's shown to the [c]ourt today. The [c]ourt also finds mitigating factor number [eleven] to be partially applicable, that is, that the extended imprisonment of the defendant would entail

excessive hardship to her or her dependents as she has a daughter[, N.J.S.A. 2C:44–1(b)(11)].

On an overall balancing of aggravating and mitigating factors, the [c]ourt finds the mitigating factors outweigh the aggravating factors which weighs in favor of a custodial term less than mid[-]range.

Accordingly, the [c]ourt will impose the following sentence: As relates to count one[,] . . . [Dunbrack] is committed to the custody of the Commissioner of the Department of Correction for a term of [thirteen] years, subject to the No Early Release Act [(NERA), N.J.S.A. 2C:43-7.2.] Upon completion of her custodial term, there will be a five year period of parole supervision. As it relates to count two of that same indictment, defendant is committed to the custody of the Commissioner of the Department of Corrections for a term of seven years with a three and a half period of parole ineligibility term. Count three merges into count one, that is, the possession of a weapon for unlawful purpose. As it relates to count four, defendant is committed to the custody of the Commissioner of the Department of Corrections for a term of seven years, again with a three and a half period of parole ineligibility term. Sentences imposed will be [con]current.

The judge sentenced Rodriguez the same day as Dunbrack and found the following:

With respect to [Rodriguez], he has no juvenile petitions here in New Jersey. He has[,] I believe[,] three juvenile petitions in I think Massachusetts. He also has a number of contacts in Massachusetts, most appearing to be at the municipal court level. The

14

convictions here today are as a result of an incident that occurred in 2014 resulting in four convictions.

. . . .

. . . Again, the instant offenses represent[] the defendant's first upper court convictions. There are no known sentences as an adult in this state or out of state other than the parole violation for which he was incarcerated.

Taking it all into consideration, the [c]ourt finds the following aggravating factors to be applicable: Number three, the risk that the defendant would commit another offense, [N.J.S.A. 2C:44–1(a)(3);] number six, the extent of defendant's prior criminal record and the seriousness of the offenses of which he's been convicted[, N.J.S.A. 2C:44–1(a)(6)]; number nine, the need for deterring the defendant and others from violating the law[, N.J.S.A. 2C:44–1(a)(9)]. The [c]ourt gives great weight to aggravating factor number nine. The [c]ourt finds no mitigating factors applicable.

An overall balancing of aggravating and mitigating factors, the [c]ourt finds that the aggravating factors outweigh the mitigating factors. There being no mitigating factors weighs in favor of a custodial sentence higher than mid-range.

Accordingly, the [c]ourt will impose the following sentences: As it relates to count one[,] . . . [Rodriguez] is committed to the custody of the Commissioner of the Department of Corrections for a term of [sixteen] years, subject to the [NERA]. Upon being released, he would then have another five year period of parole supervision.

15

With respect to count two, the defendant is committed to the custody of the Commissioner of the Department of Corrections for a term of eight years with a four year period of parole ineligibility.

As to count three, count three merges into count one.

As to count six, defendant is committed to the custody of the Commissioner of the Department of Corrections for a term of one year. The sentences imposed are to run concurrently.

## I.

"A trial court's ruling on a motion for a new trial 'shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law.'" State v. Armour, 446 N.J. Super. 295, 305 (App. Div.) (quoting R. 2:10-1), certif. denied, 228 N.J. 239 (2016). "[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse [of discretion] has been shown." Id. at 306 (first alteration in original) (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)).

Rule 3:20-1 states: "The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice." "[P]ursuant to Rule 3:20-1, the trial judge shall not set aside a jury verdict unless 'it clearly and

16                                                    A-0201-17

convincingly appears that there was a manifest denial of justice under the law.'"

Armour, 446 N.J. Super. at 305-06.

The Supreme Court has stated:

> [T]o qualify as newly discovered evidence entitling a party to a new trial, the new evidence must be[:] (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted.
>
> [Carter, 85 N.J. at 314.]

"To sustain a motion for a new trial the proffered evidence must meet all three aspects of the test." State v. Artis, 36 N.J. 538, 541 (1962) (citing State v. Johnson, 34 N.J. 212, 223 (1961)).

We have stated "post[-]conviction statements of persons who did not testify at trial, particularly when serving time at the same institution as the defendant, are 'inherently suspect.'" State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008) (quoting State v. Robinson, 253 N.J. Super. 346, 367 (App. Div. 1992)). "However, [these] post-judgment exculpatory statements to third parties . . . must be tested for credibility and cannot be summarily rejected." Id. at 258.

In State v. Ways, the Supreme Court defined "material" evidence under the Carter test, stating:  "Material evidence is any evidence that would 'have some bearing on the claims being advanced'" by the defense.  180 N.J. 171, 188 (2004) (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1991)).  Any evidence tending to support a defense clearly constitutes "material" evidence, including third-party guilt or a general denial of guilt because it "relates 'directly to the focal issue at trial.'"  Ibid. (quoting Robinson, 253 N.J. Super. at 362).  Furthermore,

> [t]he characterization of evidence as "merely cumulative, or impeaching, or contradictory" is a judgment that such evidence is not of great significance and would probably not alter the outcome of a verdict.  However, evidence that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory.
>
> [Id. at 189 (quoting Henries, 306 N.J. Super. at 535).]

Dunbrack argues the trial judge "erred in concluding that [her] new trial motion was time barred" pursuant to Rule 3:20-2 because a "motion for a new trial based on newly discovered evidence may be filed at any time" and the trial court's "circular reasoning conflates the timeliness of the motion . . . ."  She also argues Rodriguez's letter exonerating her is material, newly discovered, and would probably change the jury's verdict.  She asserts the trial judge should have

18

held a hearing before deciding the probity of Rodriguez's letter. We are unconvinced.

As the trial judge noted, Rodriguez's letter did not differ from the testimony and evidence adduced at trial. Neither Dunbrack nor N.R. denied the fact Rodriguez was the only person who attacked N.R. after the vehicle pulled into the abandoned parking lot, yet the jury convicted both defendants on all counts. Moreover, the jury convicted both defendants despite hearing evidence that Dunbrack and Rodriguez were allegedly fending off a sexual assault by N.R. on Dunbrack. The letter exonerating Dunbrack was cumulative of the evidence presented at trial and unlikely to change the outcome. Therefore, a hearing was not required to adjudicate her motion.

Furthermore, the motion was clearly time barred for the reasons expressed by the trial judge and Dunbrack's argument to the contrary lacks sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2). Therefore, the trial judge did not abuse his discretion.

## II.

We afford a high degree of deference to sentencing determinations. State v. Fuentes, 217 N.J. 57, 70 (2014).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the

> aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Once the trial court has balanced the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and -1(b), it "may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010); see also State v. Case, 220 N.J. 49, 64-65 (2014) (instructing that appellate courts may not substitute their judgment for that of the sentencing court, provided the "aggravating and mitigating factors are identified [and] supported by competent, credible evidence in the record.").

Dunbrack argues the qualitative weighing of the aggravating and mitigating factors does not support the imposition of an aggregate sentence of thirteen years. Rodriguez argues he should be resentenced because the judge did not explain why he found aggravating factors three, six, and nine, and erroneously considered a series of prior out-of-state arrests in fixing the sentence.

Pursuant to N.J.S.A. 2C:43-6, Dunbrack was eligible to serve a sentence between ten and twenty years for the first-degree robbery. As the trial judge noted, the thirteen years she received was less than the mid-range. Considering the substantial evidence of Dunbrack's guilt adduced by the State at trial and the nature of her offenses, her sentence does not shock the judicial conscience. The judge's balancing of the aggravating and mitigating factors was supported by the record.

Notwithstanding the judge's sentencing findings, while this matter was pending before the Supreme Court, in a different case we retroactively applied new mitigating factor N.J.S.A. 2C:44-1(b)(14) ("The defendant was under [twenty-six] years of age at the time of the commission of the offense") where a defendant's challenge to his sentence was pending appeal and not adjudicated with finality. State v. Bellamy, ___ N.J. Super. ___ (App. Div. 2021) (slip op. at 8). During re-argument before us, Dunbrack's counsel raised Bellamy and asserted her client's sentence should likewise be remanded because Dunbrack was younger than twenty-six years of age when she committed the underlying offenses.

Our review of Dunbrack's judgment of conviction reveals she was twenty-three years of age when she committed her offenses. As we noted in Bellamy,

21

"[u]nquestionably, the Legislature wanted to fill a void in N.J.S.A. 2C:44-1(b) by making a convicted person's youth a standalone factor in the court's sentencing calculus. . . . This draws the new mitigating factor in line with other statutes deemed to satisfy the ameliorative exception and justifies 'retroactive' applicability." Ibid. For these reasons, we remand Dunbrack's sentence for reconsideration in light of the enactment of N.J.S.A. 2C:44-1(b)(14) pending her appeal.

We remand Rodriguez's sentence as well, but for different reasons. Aggravating factor six, N.J.S.A. 2C:44-1(a)(6), requires the court to consider "the extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted . . . ." As we noted, the judge found Rodriguez had no prior adult criminal record implicating aggravating factor six. The seriousness of the offenses for which Rodriguez was convicted here would not be a relevant consideration under this factor. For these reasons, we remand Rodriguez's sentence for reconsideration.

However, we reject Rodriguez's other challenges to the sentencing findings. It is apparent aggravating factors three, the risk that the defendant would commit another offense, N.J.S.A. 2C:44-1(a)(3), and nine, the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-

1(a)(9), were readily applicable to Rodriguez. Indeed, the record was replete with evidence describing the serious nature of the offenses and the injuries inflicted by Rodriguez on N.R.

In our review of a sentencing determination, if it is "possible in the context of [the] record to extrapolate without great difficulty the court's reasoning," the sentence should be upheld. State v. Pillot, 115 N.J. 558, 566 (1989). The nature of the crimes Rodriguez committed, including luring N.R. into the vehicle and beating and then isolating him in an inhumane manner, reflect the inherently harmful behavior to be deterred which is addressed in aggravating factor nine. Beyond the conduct itself, the weapons discovered and Rodriguez's attempt to escape police supported the judge's finding of aggravating factor three that Rodriguez was at risk to commit another crime. However, because the findings regarding aggravating factor six were unclear, we remand Rodriguez's sentence for reconsideration.

Affirmed in A-0201-17 as to the convictions and reversed and remanded in part for resentencing. Affirmed in A-0518-17 as to the convictions and reversed and remanded in part for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION