**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APELLATE DIVISION
DOCKET NO. A-2380-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WALTER A. TORMASI,

    Defendant-Appellant.

_____

Argued March 18, 2025 – Decided April 17, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 97-04-0234.

Alicia J. Hubbard, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Alicia J. Hubbard, of counsel and on the brief).

Emily M. M. Pirro, Assistant Prosecutor, argued the cause for respondent (John P. McDonald, Somerset County Prosecutor, attorney; Emily M. M. Pirro, of counsel and on the brief).

Appellant filed pro se supplemental briefs.

PER CURIAM

Defendant Walter Tormasi appeals the outcome of his "look-back" remand sentencing hearing conducted by the trial court pursuant to State v. Comer, 249 N.J. 359 (2022), arguing the court misapplied the Miller[1] factors and erroneously failed to consider the aggravating and mitigating sentencing factors per N.J.S.A. 2C:44-1(a) and (b). For the reasons that follow, we conclude the trial court's application of the Miller factors was fair and supported by the record. However, we agree with defendant that that the court was required to consider the statutory sentencing factors and thus remand for consideration of the sentencing factors.

I.

We summarize the pertinent facts and procedural history. In 1996, when he was sixteen years old, defendant shot and killed his mother Frances Tormasi with a 9-mm handgun while she sat inside her car. Defendant wore a ski mask and gloves during the shooting and fled on foot afterwards. At the time, defendant's parents were separated, and he lived with his father and siblings, while his mother lived with her boyfriend.

In addition to a wealth of other evidence that led to his conviction, defendant separately made several statements to his friends before the shooting

---

[1] Miller v. Alabama, 567 U.S. 460 (2012).

indicating premeditation. The friends testified defendant: said "[h]e was going to kill" his mother because "she ran out on the family" and "[l]eft with another man"; asked how do you "shoot someone that was in a car?"; stated he did not like his mother because she had done "a lot of bad things to him in the past," and he "wanted to kill her"; and, asked "if [he] knew anything about cleaning gunpowder residue off of [a person's] hands after firing a gun, and whether it could be traced if it was cleaned off."

Defendant was tried as an adult and convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). On March 27, 1998, he was sentenced to life imprisonment subject to a thirty-year period of parole ineligibility. In 2001, this court affirmed defendant's conviction and sentence on direct appeal. State v. Tormasi, No. A-5530-97 (App. Div. Jul. 20, 2001), cert. denied, State v. Tormasi, 17 N.J. 42 (2002). Defendant filed several petitions for post-conviction relief (PCR) in the ensuing years, none of which were successful. In one of defendant's petitions, he alleged that newly discovered evidence—an unsigned "affidavit" of his then-deceased father in which the father acknowledged he hired a private detective to kill his mother—demonstrated his innocence. State v. Tormasi, No. A-4261-16 (App. Div. Oct. 16, 2018) (slip op. at 1). Defendant also filed an unsuccessful federal habeas petition. Tormasi v.

Att'y General of the State of N.J., No. CV 18-16340, 2023 WL 2263845, at *7 (D.N.J. Feb. 28, 2023); Tormasi v. Att'y General of the State of N.J., No. CV 23-1452, 2025 WL 688925, at *1 (3d Cir. Mar. 4, 2025).

In 2022, in lieu of finding N.J.S.A. 2C:11-3(b)(1)'s mandatory sentence of at least thirty years without parole is unconstitutional under the State constitution as applied to juveniles, our Supreme Court fashioned a "look-back" remedy whereby juvenile offenders, after serving twenty years, can apply to the trial court to demonstrate they have been sufficiently rehabilitated to have their sentences constitutionally shortened. Comer, 249 N.J. at 370, 394-95. Defendant's case was "summarily remanded to the trial court for resentencing in light of State v. Comer; State v. Zarate, 249 N.J. 359 (2022)." State v. Tormasi, 250 N.J. 6 (2022).

In December 2022, defendant's Comer hearing was held before the trial court. Defendant presented numerous witnesses. Defendant's sister testified her "dad took advantage of [defendant's] immaturity by manipulating him and our siblings against" their mother, even playing an audio recording of their mother to defendant and his siblings wherein she stated "she never wanted kids." She also testified she "believe[d] [their] dad was involved with the murder in some way," in that "he manipulated [defendant] . . . into really hating my mom." Defendant's brother testified he remembered their father recording and playing

conversations to him and his siblings "as an example of playing mind games." Four individuals formerly incarcerated with defendant testified that defendant is a good person who helped inmates become better persons.

The court issued an order and written decision denying defendant's motion for reconsideration of his sentence. The court found several <u>Miller</u> factors weighed in defendant's favor but, on balance, they did not warrant disturbing defendant's sentence. The court, however, did not address the statutory aggravating and mitigating factors.

In his counseled appeal brief, defendant argues:

> POINT I
>
> THE SENTENCING COURT'S FAILURE TO PROPERLY WEIGH THE MITIGATING FACTORS OF YOUTH (THE MILLER FACTORS) AS MANDATED BY <u>ZUBER</u>[2], <u>MILLER</u>, <u>COMER</u> AND <u>THOMAS</u>[3], DENIED MR. TORMASI DUE PROCESS AND RESULTED IN A SENTENCE THAT IS CRUEL AND UNUSUAL.
>
> POINT II
>
> THE SENTENCING COURT'S FAILURE TO PROPERLY FIND AND WEIGH THE STATUTORY AGGRAVATING AND MITIGATING FACTORS PRESCRIBED IN N.J.S.A. 2C:44-1 DENIED MR. TORMASI DUE PROCESS AND RESULTED IN THE

---

[2] <u>State v. Zuber</u>, 227 N.J. 422 (2017).

[3] <u>State v. Thomas</u>, 470 N.J. Super. 167 (App. Div. 2022).

MAINTENANCE OF A SENTENCE THAT IS CRUEL AND UNUSUAL.

POINT III

THE JUDGE IMPROPERLY PREDICATED SENTENCING RELIEF ON SELF-INCRIMINATION, SOMETHING NOT REQUIRED FOR COMER RELIEF, AND, THEREBY DENIED MR. TORMASI HIS RIGHTS TO REMAIN SILENT AND DUE PROCESS IN THE SENTENCING PROCEDURE.

POINT IV

THE COURT IMPROPERLY DENIED MR. TORMASI JUDICIAL SENTENCING RELIEF BECAUSE HE WOULD BE ELIGIBLE FOR A GRANT OF PAROLE FROM THE EXECUTIVE BRANCH, THEREBY DENYING HIM DUE PROCESS AND LEAVING IN PLACE AN UNCONSTITUTIONAL SENTENCE.

In his self-represented brief, defendant argues:

POINT I

THE MILLER FACTORS REFLECT "THE MITIGATING QUALITIES OF YOUTH," BARRING SUCH FACTORS FROM BEING USED AS AGGRAVATORS; THUS, THE COURT ERRED IN HOLDING THAT TWO MILLER FACTORS "WEIGH[ED] AGAINST" RESENTENCING.

POINT II

THE COURT ERRONEOUSLY REJECTED MILLER FACTORS 1, 3, AND 4, AS THOSE MILLER FACTORS WERE PRESUMPTIVELY APPLICABLE TO ALL JUVENILES AND/OR WERE AFFIRMATIVELY SHOWN TO APPLY TO

6

DEFENDANT BASED ON THE CURRENT RECORD.

POINT III

THE COURT ERRED IN FAILING TO REEVALUATE AND REDETERMINE THE STATUTORY AGGRAVATING AND MITIGATING FACTORS (AS CONTAINED IN N.J.S.A. 2C:44-1) AND IN FAILING TO CONCLUDE THAT SUCH FACTORS BALANCED IN DEFENDANT'S FAVOR.

POINT IV

REMAND PROCEEDINGS SHOULD BE CONDUCTED IN ESSEX COUNTY (WHICH IS MORE EXPERIENCED IN COMER RESENTENCINGS) OR, ALTERNATIVELY, SHOULD BE CONDUCTED BEFORE A DIFFERENT JUDGE IN DEFENDANT'S HOME COUNTY.

II.

An "appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). If the sentencing court follows "the [Criminal] Code and the basic precepts that channel sentencing discretion," the reviewing court should affirm the sentence, so long as it does not "shock the judicial conscience." State v. Case, 220 N.J. 49, 65 (2014) (internal citations omitted).

The federal and state constitutions bar cruel and unusual punishment. U.S. Const. amend. VIII; N.J. Const. art. I, ¶ 12. In 2017, our Court held sentencing

judges must "take into account how children are different" than adults by considering the Miller factors before sentencing juvenile offenders to life imprisonment without the possibility of parole or its practical equivalent. Zuber, 227 N.J. at 451 (quoting Miller, 567 U.S. at 480). Five years later, the Comer Court created the look-back procedure at issue here, reasoning that "[a]llowing minors a later opportunity to show they have matured, to present evidence of their rehabilitation, and to try and prove they are fit to reenter society would address" the constitutional problem of imposing a decades-long sentence with no possibility of parole on a juvenile offender. 249 N.J. at 401 (citing Graham v. Florida, 560 U.S. 48, 75 (2010)).

Our Court has distilled the "Miller factors" as follows: "[(1)] [the] defendant's 'immaturity, impetuosity, and failure to appreciate risks and consequences'; [(2)] 'family and home environment'; [(3)] family and peer pressures; [(4)] 'inability to deal with police officers or prosecutors' or his own attorney; and [(5)] 'the possibility of rehabilitation.'" Zuber, 227 N.J. at 453 (quoting Miller, 567 U.S. at 477-78). The Court directed the trial courts to consider the "totality of evidence," including "whether the defendant still fails to appreciate risks and consequences," "whether he has matured or been rehabilitated," and his "behavior in prison since the time of the offense." Comer, 249 N.J. at 403. The trial court then has discretion to affirm or reduce the

sentence.  Id. at 370.  State v. Case, 220 N.J. 49, 65 (2014).  The Comer Court made clear that, for look-back hearings, the decision to impose a lesser sentence is discretionary:  "After evaluating all the evidence, the trial court would have discretion to affirm or reduce the original base sentence . . . and to reduce the parole bar to no less than [twenty] years."  Id. at 404.

A.

We first examine the trial court's application of the Miller factors and defendant's respective challenges.

(1) Immaturity, Impetuosity, and Failure to Appreciate Risks and Consequences

The court recognized defendant was sixteen when he committed the murder, but found he "clearly demonstrated an understanding of what a murder consisted."  The court reasoned:

> [D]efendant discussed the plan to kill his mother prior to the actual commission of the murder.  He clearly thought thoroughly about how he would kill his mother.  The murder was not a means of provocation that occurred at the moment, but rather a planned and detailed scheme as to how he would kill her.  He did not commit the crime with a group of individuals that provoked him or "egged him on" in the heat of the moment.  This clearly demonstrates that . . . defendant understood that if he went through with his plan to kill his mother he would be incarcerated.

The court also recognized that while defendant "seems to have developed a greater sense of maturity while incarcerated," this maturity has not extended to his ability to take responsibility for his actions or even acknowledge wrongdoing.

Defendant asserts the trial court erroneously weighed this factor against him, discounting his youthfulness because he understood the nature of his crime when he shot his mother. We disagree.

We discern no abuse of discretion in the court's application of the first factor. The murder was not committed in a manner that demonstrated impetuosity or failure to appreciate risk, but was calculated and deliberate, as defendant acted alone, lured his mother to the driveway, shot her while wearing a ski mask and gloves, and then fled the scene.

(2) Family and Home Environment

Unsurprisingly, the court found this factor weighed in defendant's favor, as defendant's home life was "toxic" and beset by a "continuous pattern of abuse."

(3) Family and Peer Pressure

The court recognized the "emotional, physical and mental abuse" his father heaped on defendant, but found the "pressure" contemplated in Comer exhibits itself when a co-defendant coerces a juvenile into committing a crime,

10

which was not the case here. Defendant argues the court, in weighing this factor against him, "refused to acknowledge the devastating role of family pressure in [defendant's] life." We disagree.

The court's finding is supported by the record. The credible facts indicate defendant acted alone in shooting his mother, as there was no one—family or friend—egging him on to commit the crime. This is a far cry from the scenario Comer envisioned warranting resentencing, where a juvenile "acted in response to peer pressure and did not carry out a significant role in the homicide." Id. at 371. Though his father influenced how he viewed his mother, defendant solely carried out the murder and there is no credible evidence in the record to suggest otherwise.

### (4) Inability to Deal with Police Officers, Prosecutors, or Attorneys

The trial court found that this factor weighs against defendant given that he was not persuaded to accept a plea deal but was convicted by a jury trial, nor was he denied effective assistance of counsel as evidenced by the denial of his PCR petitions. Defendant argues youth "affects someone's ability to maneuver in the criminal legal system" and "every aspect of [his] treatment in the system may have been impacted" by his "undeveloped brain." We are unpersuaded.

Miller instructs sentencing courts to consider whether a defendant "might have been charged and convicted of a lesser offense if not for incompetencies

11

associated with youth." 567 U.S. at 477. Defendant has presented no credible evidence that he may have been convicted of a lesser crime but for his youthful ignorance of legal machinations at the time of his proceedings.

(5) Possibility of Rehabilitation

Miller recognized that "incorrigibility is inconsistent with youth" and rehabilitation may remove the justification for lengthy sentences meted out to juvenile offenders. Id. at 473. The trial court determined this factor weighed in favor of defendant. Defendant has obtained certificates from certain youth development programs while incarcerated, three paralegal certificates, and has been helpful to other inmates.

B.

We next examine defendant's challenge to the trial court's balancing of the Miller factors which denied him resentencing.

Defendant argues the trial court impermissibly denied him relief based on its finding that he "refus[ed] to [self-]incriminate" which "create[s] a bar to Comer relief for anyone who maintain[s] their innocence." We disagree.

Comer directs trial courts to consider whether defendants have "matured or been rehabilitated." 249 N.J. at 400. In his analysis of factor one, the court cites defendant's "refus[al] to . . . acknowledge" that "he has done anything wrong" as evidence that he has not matured "in regard to his ability to

12

comprehend and take responsibility for his actions." This analysis comports with the principles in Comer and, importantly, the court considered the totality of evidence before weighing each Miller factor individually. The court appropriately considered defendant's claim of innocence but did not adopt a per se rule that defendant is not entitled to resentencing because he asserts his father hired someone to kill his mother. See, e.g., Berta v. N.J. State Parole Board, 473 N.J. Super 284, 318 (2022) ("We reject [the defendant's] argument that the Parole Board's consideration of his denial of guilt violates his due process rights, and we decline [his] request that we adopt a per se rule that would categorically preclude the Parole Board from considering this circumstance.")

Defendant's argument that the trial court "ced[ed] . . . the Miller/Comer sentencing determination" to the parole board by mentioning defendant's imminent parole eligibility is also unpersuasive. The court simply noted at the end of a twenty-page written decision, "[a]s a practical matter," defendant would be eligible for parole soon and can make many of the same arguments at that time. The court did not forgo its responsibilities on remand to analyze each Miller factor individually, and the mere observation of the reality of defendant's parole eligibility situation did not deny defendant due process.

On balance, we conclude the court did not abuse its discretion in finding three out of five Miller factors weighed against defendant. We specifically

underscore the court 's finding that, when defendant shot his mother, he acted alone without co-defendants exerting peer pressure, in a manner indicating his full awareness of his crime and its attendant consequences. We therefore conclude defendant's sentence should not be disturbed on this basis.

III.

Defendant argues the trial court erred by not reevaluating the statutory aggravating and mitigating sentencing factors, which "requires [a] remand for imposition of a properly imposed sentence." The State counters that "remand was solely for the purposes of assessing the Miller factors" and defendant did not raise the statutory sentencing factors during the Comer hearing. The State argues at "no point does the Comer [C]ourt decree that every petition must be reevaluated as if it were a full resentencing, with an assessment" of the sentencing factors.

The Comer Court created a procedure for juvenile offenders to petition the court to review their sentence after twenty years, explaining its "judicial surgery" was to save N.J.S.A. 2C:11-3(b)(1)'s mandatory minimum sentence of thirty years without parole from "constitutional infirmity" as applied to juvenile offenders. Id. at 401-02. Though the Court gave clear instructions to trial courts to assess the "mitigating qualities of youth" delineated in Miller, it did not

A-2380-22

expressly instruct the trial courts to reassess the statutory sentencing factors. Id. at 397, 403-04.

A full "balancing of the relevant" statutory factors, however, is warranted for the court to decide if defendant's sentence "should gravitate toward the upper or lower end of the range" permitted by N.J.S.A. 2C:11-3(b)(1). Case, 220 N.J. at 64 (citing State v. Fuentes, 217 N.J. 57, 73 (2014)). Moreover, when "'resentencing' is ordered after appeal," as it was here, "the trial court should view defendant as he stands before the court on that day," and "necessarily involves the reevaluation and reweighing of aggravating and mitigating factors." State v. Randolph, 210 N.J. 330, 333, 354 (2012). While the State is correct defendant did not raise the statutory factors at his Comer hearing, he did argue them in his brief in support of resentencing and the court and the parties clearly stated defendant was before it for a resentencing hearing. It is not stated in the record why the sentencing factors were not addressed by the court.

Accordingly, we agree with defendant and remand for the purpose of reevaluating all the statutory aggravating and mitigating factors as they apply to defendant at the time he stands before the court. We offer no opinion on applicability or weight to be ascribed to the relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b).

IV.

In his self-represented brief, defendant argues the "circumstances require that remand proceedings be conducted in another venue, preferably Essex County," or alternatively, the proceedings be "assigned to another judge within defendant's home county of Somerset." Defendant maintains his Comer hearing was "riddled with errors" and the trial court "improperly rejected three Miller factors."

When a court expresses comments regarding credibility or may have a commitment to their prior findings, it is appropriate for remand proceedings to be conducted by a different trial court. Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (first citing J.L. v. J.F., 317 N.J. Super. 418, 438 (App. Div. 1999), then citing P.T. v. M.S., 325 N.J. Super. 193, 220-21 (App. Div. 1999)); see also State v. Tindell, 417 N.J. Super. 530, 572 (App. Div. 2011) (holding a remand to a different trial court for resentencing was appropriate where the court made "statements questioning the veracity" of a witness). Here, the court diligently considered the Miller factors and there is no evidence it is committed to a certain outcome. Moreover, the court did not originally sentence defendant, and. importantly, it has not it considered the credibility of any witnesses nor express its views on the sentencing. Indeed, we are remanding because the court did not consider them at all. We thus reject defendant's

16  A-2380-22

argument that resentencing must be conducted with a different court or in a different venue.

To the extent we have not addressed any remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division